291 So.2d 403 (1974)
CO-OPERATIVE COLD STORAGE BUILDERS, INC., d/b/a CO-OP-CO
v.
ARCADIA FOODS, INC., and Theodore T. Daly, d/b/a Arcadia Food Co.
No. 6010.
Court of Appeal of Louisiana, Fourth Circuit.
March 8, 1974.
*404 William J. Lopez, Metairie, for plaintiff-appellant.
Emile J. Dreuil, Jr., New Orleans, for defendants-appellees.
Before STOULIG and BOUTALL, JJ., and MARCEL, J. Pro Tem.
STOULIG, Judge.
Plaintiff, Co-Operative Cold Storage Builders, Inc., doing business as Co-Op-Co, filed suit for $4,308.16, the balance due for building a walk-in cooler, and for the additional sum of $349.44 for materials it purchased and had delivered to the jobsite for remedial work. Defendant, Arcadia Foods, Inc., answered and admitted withholding payment of the amount claimed, but averred it expended $3,421.60 to correct defective work, specifically, a leaky ceiling. It further asserted the balance of $886.56 still due was tendered to, and refused by, plaintiff. Then, assuming the position of plaintiff-in-reconvention, Arcadia demanded $5,000 for mental anguish, inconvenience, delay, and aggravation occasioned by plaintiff's defective installation, dilatory tactics in undertaking remedial work, and finally in performing the remedial work in an unworkmanlike manner.
The trial court awarded the defendant $113.44. In his written reasons for judgment, the trial judge explained how he arrived at this sum. Defendant was allowed $1,000 on its reconventional demand from which was deducted $886.56, the balance due and unpaid by the defendant on the original contract (stipulated amount due plaintiff on original contract, $4,308.16, less $3,421.60, the cost of remedial work paid by defendant). Plaintiff has appealed.
The contract at issue, signed on April 11, 1968, by Thomas Blankenship, plaintiff's representative, and Ted Daly, defendant's president, specified plaintiff would build a concrete block walk-in meat cooler for a consideration of. $7,885.20. Designed for storing large quantities of prime beef and processed meat, it was to contain a rail system of 205 feet of track on which 91 meat hangers could be moved. From plans drawn by Blankenship and approved by Daly, three carpenters employed by plaintiff erected the structure with Blankenship checking their daily progress. It was completed on July 19, 1968; however, as soon as defendant began to use it, Daly noted a serious defectwater dripped from the ceiling in many areas. Daly immediately notified Blankenship of the problem and was told the dripping would stop within a few days. When this proved untrue, Daly attempted *405 to register a complaint with Blankenship and only succeeded in talking to him after telephoning five or six times. By this time the drippings were black in color and dropped from fungus-like formations on the ceiling.
In September 1968, Co-Op-Co finally attempted to correct the defect by repairing the vapor barrier in the cooler ceiling. This is a film-like seal over 4 inches of insulating material, which in turn was next to the nonporous V-groove aluminum ceiling of the interior of the cooler. Plaintiff's efforts to correct the problem were to no avail. The drippings, from between 15 and 20 spots, continued, making it necessary for Daly to constantly mop the floor and cover the meat in the cooler to protect it.
Again Daly made numerous calls to plaintiff's firm before Co-Op-Co would agree to make a second attempt to stop the leaking. This time Blankenship planned to plaster the ceiling. Before the plastering could be done, Daly was required to deplete his inventory and so advised Blankenship, who with this in mind, set up a special appointment in December 1968 to perform the work. Plaintiff's workmen failed to appear or cancel the appointment. Daly did not hear from Blankenship until several days after the scheduled appointment, but despite this fact he agreed to set another time when plaintiff could perform the remedial plastering. Again he depleted his stock and again plaintiff's workmen failed to appear or to cancel. And the dripping continued.
In January 1969, Co-Op-Co proposed yet another remedial procedure, namely, installing a plastic coated plywood material in place of the metal ceiling. Once again Daly agreed to let plaintiff try. The needed material was delivered to Arcadia on February 22, 1969battered and defective. Nonetheless Daly agreed to let plaintiff install it. An appointment was made by one of plaintiff's representatives to install the new ceiling in March 1969, and again without explanation, it was not kept. At this point, Daly called in Anco Insulation, who performed the remedial work by installing a new Fiberglass ceiling. This corrected the problem.
Various engineering experts explained the dripping was caused by the use of a metal ceiling that impeded proper air circulation, by faultily installed insulation and a defective vapor barrier. It appears thus the problem was created by a poor design, coupled with poor workmanship. Since the plan and the construction originated with plaintiff's employees, Co-Op-Co was responsible for the defect and had the obligation to remedy the dripping condition. We note here that Lionel E. Flotte, Jr., a consulting engineer with plaintiff, testified the fault stemmed from poor workmanship of other contractors, namely the electrician and refrigeration engineer. Because Flotte authorized Blankenship to do remedial work after his inspection, we think this was a tacit admission of plaintiff's responsibility, and after plaintiff tried corrective measures, the ceiling still leaked.
Under these circumstances, the reciprocal rights of the litigants are prescribed by LSA-C.C. art. 2769, which provides:
"If an undertaker fails to do the work he has contracted to do, or if he does not execute it in the manner and at the time he has agreed to do it, he shall be liable in damages for the losses that may ensue from his non-compliance with his contract."
Where the building contract has been substantially performed as in the case here, the contractor is entitled to recover the contract price less whatever damage the owner sustained attributable to the breach. Airco Refrigeration Service, Inc. v. Fink, 242 La. 73, 134 So.2d 880 (1961). Arcadia's contractual damage is the amount it paid Anco Insulation to remedy the defect.
Plaintiff urges the leaky ceiling was a minor problem and not a major *406 defect; therefore defendant is liable for the entire contract price under the holding in Davidson v. McGrath, 5 La.App. 125 (Orl.1926). In that case an owner refused to pay a contractor for putting a new roof on her house. Although several slates were cracked and flashing was needed, the roof required no repairs after the contractor completed his job. The court reasoned these minor defects did not excuse payment by the owner. Davidson is not factually comparable with the instant case. It cannot be said the dripping of liquid from a cooler ceiling onto stored meat is a minor problem. This was a major defect that defendant's president gave plaintiff ample opportunity to correct before calling in another contractor.
Plaintiff's second contention is that the work was performed in accordance with the plans and specifications, thus, if the design is defective, the contractor is not responsible. In support of this position he cites Draube v. Rieth, 114 So.2d 879 (La.App.Orl.1959), which limits the application of the rule as stated to instances where the contractor has not prepared the plans or does not possess sufficient expertise to detect the flaw in design. If the contractor is knowledgeable in the field where the plans are faulty, it is his duty to warn the owner for whom he is erecting the structure. Not only did plaintiff's employee draft the plans, but this firm holds itself out as specialists in designing coolers.
Finally, plaintiff claims the award of $1,000 for mental anguish, etc., is not authorized by law. We disagree. In Jack v. Henry, 128 So.2d 62 (La.App. 1st Cir. 1961), the court cited LSA-C.C. art. 1934 (3) as its basis for making such an award. We have previously detailed the inconvenience and inconsideration defendant experienced during the 9-month period he attempted to have plaintiff remedy its defective work. Although we are of the opinion that an award of $1,000 to reconvenor is conservative, it is warranted from the evidence and does not constitute an abuse of discretion by the trial judge.
For the reasons assigned, the judgment appealed from is affirmed; costs to be borne by the appellant.
Affirmed.