356 So.2d 1094 (1978)
Betty WHITENER, Plaintiff-Appellee,
v.
Durwood CLARK et al., Defendants-Appellants.
No. 13481.
Court of Appeal of Louisiana, Second Circuit.
February 20, 1978.
Rehearing Denied April 4, 1978.
Writs Refused May 12, 1978.
*1096 John S. C. Massey, West Monroe, for defendants-appellants.
McKinley, Bruscato & Loomis by Albert E. Loomis, III, Monroe, for plaintiff-appellee.
Before BOLIN, PRICE and MARVIN, JJ.
MARVIN, Judge.
This case is a sequel to Clark v. Whitener, 296 So.2d 393 (La.App. 2d Cir. 1974), where we affirmed a judgment in favor of the contractor against the homeowner for retainage due on a residential building contract. There we found substantial compliance with the contract, but reserved to the homeowner her right to claim damages in a separate action against the contractor for his alleged unworkmanlike performance.
In the homeowner's suit which followed, the contractor and bonding company appeal from a judgment in favor of the homeowner for damages and the cost to correct defects in the construction and to complete the home in accord with the original contract. The homeowner answers the appeal seeking to increase the judgment. The judgments totaled $15,361 in the first case and $16,846 in this case. As amended, we affirm and adopt the lower court's reasons for judgment.

SEVERANCE OF THIRD-PARTY DEFENDANTS
The contractor impleaded several of his subcontractors as third-party defendants, contending in the alternative for judgment against each subcontractor for whatever respective sums that the contractor might have been ordered to pay the homeowner in the principal demand for deficiencies in the work each subcontractor obligated himself to perform.
The record and minute entries are not exceedingly clear as to the disposition of the third-party demands, but apparently these demands were ordered severed from the principal demand a few days before trial on a rule to show cause. The rule to show cause issued on the homeowner's allegations that most of the third-party defendants (nine in number) were impeding and delaying trial of the principal demand because they were yet filing numerous pleadings and motions and had failed to appear at pre-trial conferences and to otherwise comply with pre-trial rules.
The homeowner alleged that she was entitled to severance under C.C.P. Art. 1038. Under some conceivable circumstances it could be foreseeable that a third-party plaintiff would suffer an injustice if his third-party demands were severed and separate trials ordered. By denying severance, undesirable piecemeal appeals would be avoided and defenses of third-party defendants which might inure to the benefit of the principal defendant on the main demand could be heard and all demands decided at the same time.
It has been recognized, however, that the trial court has discretion in determining whether the incidental demands are to be tried with the main demand. See Johnson v. Ponder, 225 So.2d 633 (La.App. 1st Cir. 1969), writ denied; Offshore Crewboats, Inc. v. Harredge, 306 So.2d 774 (La. App. 4th Cir. 1975). This record contains no evidence from which we can find an abuse of discretion on the part of the trial court in granting severance and we cannot presume any.

THE RELEASE OF THE ARCHITECT AS AFFECTING THE CONTRACTOR
By supplemental pleadings filed after suit was instituted against the contractor, the homeowner sued the architect, seeking recovery on the basis of the architect's failure in design and in supervision of the construction. The contractor prayed for judgment jointly, severally, and/or in solido against all defendants.
After this occurred and before trial, the homeowner and architect amicably settled their dispute and the architect and his insurer *1097 were released by the homeowner and were dismissed as defendants with reservation by the homeowner of her rights against the contractor.
The contractor contends that he and the architect were solidary obligors and the effect of the release of the architect results in the release of the contractor to the extent of one-half of the obligation found. We do not dispute the legal effect of such a release of one solidary obligor, but we do not find that the architect and contractor were solidary obligated in all respects for the items of damage found against the contractor.
In an excellent and detailed 16-page opinion, the trial court considered the multitude of complaints about the construction asserted by the homeowner. She sued for $60,000 itemized damages and was awarded less than $17,000. Generally, the items of damage which concerned the lower court were functional and cosmetic and did not relate to faulty design. The architect's shortcomings, if any, resulted not from faulty design but from failure to timely require the contractor and the subcontractors to comply with the plans and specifications in workmanship and material. It is also shown that the architect sent to the contractor several itemized lists (called "punch lists") of unsatisfactory or incomplete work before formally giving the contractor written notice that the homeowner intended to invoke the provisions of the contract which allowed her, through others, to complete the contract at the contractor's expense. Under these circumstances, the architect may not be a solidary obligor with the contractor. See and distinguish Town of Winnsboro v. Barnard & Burk, Inc., 294 So.2d 867 (La.App. 2d Cir. 1974). Whether solidarity is found, when not expressly undertaken, depends upon the particular circumstances presented. We find no manifest error in the lower court's concluding that no solidarity existed under the circumstances found and we adopt the lower court's opinion in these respects except as otherwise shown.

CRACKS IN CONCRETE SLAB
The lower court found two cracks in the concrete slab foundation which were labeled as "major" and as "serious" with some "not appreciable difference" in floor level (displacement). The evidence conflicted as to whether the cracks were caused by the failure of the architect's design. We note that the contract called for soil compaction tests, which we deem was one of the obligations assumed by the architect. From the record, it is impossible to determine whether the cracks in the foundation resulted from the design (coupled with the absence of soil compaction testsa responsibility to be performed under the architect's direction) or from poor workmanship. There is no evidence to show that the cracks resulted from poor workmanship and this we cannot assume. An owner seeking to recover from the contractor has the burden of proving both the existence and nature of the defects, that the defects are due to faulty materials or workmanship and the cost of repairing the defects. Nichols Ford Company, Inc. v. Hughes, 292 So.2d 345 (La.App. 2d Cir. 1974). In this respect, we disallow the award of $2,400 damages assessed by the lower court.

PLUMBING AND SEWERAGE SYSTEM
The lower court correctly found $1,954.28 as the cost of correcting defects and omissions in the system. The plumbing subcontractor failed to install two field lines and a distribution box and failed to connect to the waste system the washing machine. To correct this omission, the homeowner elected to install three field lines and a larger distribution box (a septic tank). Other defects were remedied by a larger diameter cooper pipe to replace a one-inch plastic (PVC) pipe supplying water to the home. Credits were allowed against this cost ($1,954.28) of $375 and $225, resulting in a net award to the homeowner of $1,354.28.

SWIMMING POOL LEAKAGE
We observe here that the bond for the home did not include the pool which *1098 was under a separate contract. As to the bonding company, this award should be rejected.

GENERAL DAMAGES

MENTAL ANGUISH
The lower court awarded $5,000 to the homeowner for her mental distress even to extent of seeking psychiatric help caused by the shattering of her dreams of owning a beautiful home. The contractor contends an award for mental anguish arising from breach of contract is not to be allowed unless the object of the contract is gratification of some intellectual enjoyment. C.C. Art. 1934(3).[1] This was the holding of Catalanotto v. Hebert, 347 So.2d 301 (La.App. 4th Cir. 1977), a case on a residential building contract directly in point, citing Meador v. Toyota of Jefferson, Inc., 332 So.2d 433 (La.1976).[2] We do not interpret Meador as did Catalanotto. We cannot say that damages for mental anguish are not authorized by C.C. Art. 1934(3) for a breach of contract for the construction of a distinctively planned residence. This type contract, in our opinion, is greatly different from the contract, as in Meador, for the repair of an automobile. We differ with the 4th Circuit, distinguish Meador, and in this case affirm the award of the lower court for damages for mental anguish.
The lower court achieved substantial justice in determining the award and we decline to increase the award as sought by appellee.

Recapitulation of amended award:
BELOW ITEM HERE
$1,354.28 Plumbing $1,354.28 3,172.50 Pool 3,172.50* 2,400.00 Slab - 0 - 1,855.37 Electrical 1,855.37 639.70 Slate 639.70 1,525.00 Air Conditioning 1,525.00 900.00 Carpentry 900.00 5,000.00 General 5,000.00 __________ __________ $16,846.85 TOTAL $14,446.85
* Against the contractor only.

The judgment below is recast as follows:
It is hereby ordered, adjudged and decreed that there be judgment herein in favor of Betty Whitener and against Durwood Clark and Great American Insurance Company in solido for $11,274.35, with legal interest from judicial demand.
It is further ordered, adjudged and decreed that there be judgment herein in favor of Betty Whitener and against Durwood Clark for $3,172.50 with legal interest from judicial demand.
Fees awarded below to the experts who gave opinion testimony exclusively relating to the slab are disallowed.
Fees awarded below to experts who gave opinion testimony exclusively relating to the swimming pool are disallowed as to Great American Insurance Company only.
Except as amended above, judgment is affirmed at appellant's cost.

*1099 On Applications for Rehearing; Motion to Dismiss.
Orders of appeal in this case were granted before January 1, 1978. Plaintiff-Appellee moves to dismiss appellant's application for rehearing on grounds that it was not filed within fourteen days of rendition of our judgment. LSA-C.C.P. Art. 2166, prior to its amendment by Act 179 of 1977, provided the fourteen-day delay. The 1977 Act extended the delay to thirty days, but repealed prior laws in conflict, and made the provisions applicable to all appeals granted after January 1, 1978. The application in question was filed more than fourteen but less than thirty days after our opinion was mailed.
The Uniform Rules of the Courts of Appeal and the Supreme Court rules were amended to conform to the 1977 Act. The amendments to the appellate rules, published in the October 27, 1977 advance sheet (349 So.2d No. 3, XCII), were made effective January 1, 1978, without mentioning the effect on appeals ordered before January 1, 1978.
On January 10, 1978, the Supreme Court further amended its Rule XXIX by providing:
"Section 2. The provisions of this rule are applicable to all decisions of the courts of appeal rendered on January 1, 1978 and thereafter." 353 So.2d No. 2, LXI.
We hold that the Supreme Court rule is controlling and that the provisions of Article 2166 as amended by Act 179 of 1977 are applicable to all judgments of this Court rendered on and after January 1, 1978, whether the date on which the appeal was ordered is before or after January 1, 1978.
The application for rehearing was timely filed and the motion to dismiss is overruled.
Considering on the merits the applications for rehearing of both litigants, the applications are denied.
NOTES
[1] C.C. Art. 1934(3) reads:

"Although the general rule is, that damages are the amount of the loss the creditor has sustained, or of the gain of which he has been deprived, yet there are cases in which damages may be assessed without calculating altogether on the pecuniary loss, or the privation of pecuniary gain to the party. Where the contract has for its object the gratification of some intellectual enjoyment, whether in religion, morality or taste, or some convenience or other legal gratification, although these are not appreciated in money by the parties, yet damages are due for their breach; a contract for a religious or charitable foundation, a promise of marriage, or an engagement for a work of some of the fine arts, are objects and examples of this rule.
"In the assessment of damages under this rule, as well as in cases of offenses, quasi offenses, and quasi contracts, much discretion must be left to the judge or jury, while in other cases they have none, but are bound to give such damages under the above rules as will fully indemnify the creditor, whenever the contract has been broken by the fault, negligence, fraud or bad faith of the debtor."
[2] Earlier, the 4th Circuit had allowed damages for mental anguish arising from the breach of a contract to construct a concrete block, walk-in cooler, Co-Operative C. Stor. Bldrs., Inc. v. Arcadia Foods, Inc., 291 So.2d 403 (La.App. 4th Cir. 1974).