BOWES, Judge.
This case involves claims of breach of contract made by both the plaintiff, CLB Enterprises, Inc., d/b/a Catalina Pools (hereinafter Catalina) and the defendants, Mr. and Mrs. C.D. Kittok. The trial court rendered judgment in favor of the Kittoks and against plaintiff, dismissing Catalina’s claim. The court further rendered judgment in favor of defendants, as plaintiffs-in-reconvention, for $16,500.00. Catalina appeals; we affirm.
FACTS
Two or three years prior to May 22,1981, Joseph G. Wenzel, Jr., salesman for Catalina, and defendants held the first of what was to be a series of meetings discussing the possible sale of a swimming pool to be constructed in defendants’ backyard. The backyard in question was irregularly shaped, with a 10' servitude along the back of the property and a 5' servitude along the side of the property, both in favor of Louisiana Power & Light Co. The Kittoks testified that, from the onset, Wenzel knew of the existing servitude.
Initially, in his testimony, when confronted with his earlier deposition to the contrary, Mr. Wenzel denied knowledge of the servitude during negotiations with the Kit-toks. However, on cross-examination, he admitted that he did know about the servitude. Obviously, the trial judge believed the Kittoks.
The Kittoks also testified that they did not want an “ordinary-shaped” pool. Because of these limitations, they believed that a rectangular pool would not fit into their backyard and were doubtful that any pool would do so.
During the meetings with appellees, Wenzel showed them numerous plans of pools with a variety of configurations, none of which were acceptable to the Kittoks. Appellees also testified that Wenzel even “staked out” a rectangular-shaped pool in their backyard, which shape was rejected by the Kittoks as being too ordinary. Mr. Wenzel testified initially that he did not stake out a rectangular pool. Both Wenzel and Donald Baxter, owner of Catalina Pools, testified that because of the work involved, a pool was usually never staked out before the signing of a construction contract. However, it is clear here that Wenzel was having a difficult time trying to sell a pool to appellees and it is perfectly logical that he would take unusual measures to do so. Here, again, the trial judge obviously believed the Kittoks.
After Wenzel failed to provide an acceptable pool plan, he indicated to the Kittoks that he knew an architect, a Mr. Yon Os-thoff, who could design a custom pool for them. Other testimony revealed that Wen-zel and Catalina had often used and worked with this architect before. The Kittoks were contacted by Mr. Von Osthoff, who prepared a plan for a custom pool. The location of the pool, as depicted on Von *836 Osthoffs plan, did not encroach on the servitudes located in appellees’ backyard.
On May 22, 1981, plaintiffs and defendants entered into a “Swimming Pool Construction Agreement”, in which Catalina agreed to construct a swimming pool in the Kittoks’ backyard, “as per plans”. Total price of construction of the pool was $19,-279.00. At that time, Mr. Kittok gave Catalina a down payment of 10%.
Two days later, Wenzel prepared a detailed scale plan of the design which encompassed the location and specifications of the pool to be built. Again, in this plan, the pool did not encroach on the servitude.
After the plans were prepared, the pool was staked out and construction was begun. Wenzel testified that, after the pool was first staked out, Mrs. Kittok made him move the location of the pool because she did not want the pool that near to her back patio. Mr. and Mrs. Kittok denied this and both testified that they did not have the location of the pool restaked. Once again, on a credibility call, the trial judge believed the Kittoks.
When the pool was approximately 80% complete, Mr. Kittok sent Catalina a check for $13,495.30 as partial payment. That weekend, the Kittoks’ son was visiting with them and casually examined the pool and discovered that one wall of the pool encroached on the 10' servitude running along the rear of the property. An accurate tape measurement immediately confirmed this. Therefore, on Monday, Mr. Kittok stopped payment on the check. All construction on the pool ceased and this litigation ensued.
On September 23, 1982, CLB filed a petition for breach of contract and for damages, alleging that defendants breached the contract by their failure to make payment. Appellees filed a reconventional demand against Catalina, alleging breach of contract and damages for faulty workmanship.[1]
During the pendency of the action, several attempts were made to purchase property from the Kittoks’ neighbor to the rear. These attempts were unsuccessful.
Witnesses for Catalina testified that they offered to relocate the wall of the swimming pool so that it would no longer encroach on the servitude. The Kittoks have refused this offer because it would reshape the configuration of the pool so that it would be almost rectangular and such a configuration had never been acceptable to the Kittoks.
The pool is still in defendants’ backyard remaining unfinished since the summer of 1981.
After a trial on the merits, the court ruled against plaintiff and for defendants on the principal demand, dismissing plaintiff’s petition. The trial court also ruled in favor of defendants and against plaintiff on the reconventional demand, awarding to defendants $6,500.00 for costs to have the pool removed and the hole refilled and $10,-000.00 for loss of use and enjoyment of the property and for embarrassment to the Kit-toks.
ANALYSIS
On appeal, plaintiff-appellant, Catalina, assigns three specifications of error:
I. The Court erred in dismissing Catalina’s claim, awarding Catalina nothing for the work it performed and in failing to enforce the provision of Catalina’s contract placing responsibility for the location of the pool upon the owners.
II. The Court erred in awarding Mr. and Mrs. Kittok nonpecuniary damages.
III. The Court erred in awarding Mr. and Mrs. Kittok prospective damages for the cost of removal.
I. DISMISSAL OP APPELLANT’S SUIT AND FAILURE TO ENFORCE PROVISIONS OF CONTRACT
Catalina argues that pursuant to the terms of the contract, it is not liable for the *837 faulty construction of the pool because of the pool’s encroachment on the servitude.
In Frank’s Petroleum, Inc. v. Mayo, 438 So.2d 696, 699 (La.App. 2 Cir.1983), the court said:
“Contracts must be construed in such a way as to lead to logical conclusions and to give effect to the obvious intention of the parties. They must be interpreted in a common-sense fashion, according to the words of the contract their common and usual significance. The contract must be viewed as a whole and, if possible, practical effect given to all its parts, according to each the sense that results from the entire agreement so as to avoid neutralizing or ignoring any of them or treating them as surplusage. When there is anything doubtful in agreements, we must ascertain the common intention of the parties.” [citations omitted]
See also LSA-C.C. arts. 2045, 2050; Lambert v. Maryland Casualty Company, 418 So.2d 553 (La.1982); West Side Funeral Home, Inc. v. Nicholas, 425 So.2d 837 (La. App. 5 Cir.1982).
The intent of the parties is to be determined by the words of the contract when those words are clear, explicit and lead to no absurd consequences. LSA-C.C. art. 2046; Harper v. Intracoastal Truck Lines, 451 So.2d 1289 (La.App. 1 Cir.1984). Furthermore, any ambiguity in the contract is to be construed against the party who prepared the contract. LSA-C.C. art. 2056; Kenner Industries v. Sewell Plastics, 451 So.2d 557 (La.1984). In this case, it was Catalina who did so.
Nevertheless, appellants argue that the following clause in the Swimming Pool Contract relieves them of liability for the erroneous location of the pool and that the responsibility for the proper location was the sole duty of the owner.
“CONDITIONS OF CONTRACT
* * * * * He
6. Owner shall be responsible for work being done within his property lines and, in conformity with local zoning, the pool site shall be clear of easements or setback restrictions and the Owner shall hold and save harmless Contractor from any liability to Owner or third person from such construction beyond said property lines. Owner shall be responsible for adequate access to the pool site, including permission for this Contractor’s access if such is across property other than the undersigned Owner’s. Owner shall not encumber or sell the property during construction.”
The Kittoks’ rebuttal argument is twofold:
First, they contend that although Paragraph 6 “appears to place upon the Owner the responsibility for causing the work to be performed within the property lines”, it is not applicable here in one respect and, in other respects, they have complied with this paragraph. As the record reveals, the pool is located within the property lines and, therefore, Paragraph 6 is not applicable in this respect.
In regard to the pool site “being clear of easements ... ”, appellants were emphatically and thoroughly informed that this was a necessity and the scale plan drawn by the architect that appellants recommended clearly calls for construction of the pool to be completely within the property limits without any encroachment on the servitude. In our opinion, having the scale drawing made and giving it to the appellants, completely fulfilled the owner’s duty within the meaning of this paragraph. It would be utterly ridiculous to assume that, after doing all of this, the parties intended, by these words in paragraph 6 of the contract, that it was to be thg owner’s duty to stand over and physically supervise the construction being done by appellant’s personnel to see that they did not fail to follow the construction lines designated by the scale drawing.
Secondly, appellees argue that Paragraph 6 must be read in conjunction with the other provisions of the contract and, most specifically, with the following:
Construction: ...
*838 2. Pool location: “As per plans.”
Appellees submit that had the pool been located “as per plans”, it would not have encroached on the servitude. The exhibits in this case completely support this contention. The architectural plan prepared by Von Osthoff shows the location of the pool to be without any encroachment on the servitude, as does the official pool plans prepared by Wenzel which were used in the actual construction of the pool, as does the application for a building permit submitted by Catalina to the Parish of Jefferson. However, the pool as it was constructed by appellants and where it is presently located, does encroach on the servitude.
Appellees suggest that, even assuming that appellant’s argument (that a servitude line is a property line) is correct, Paragraph 6 does not relieve Catalina of its liability for the faulty placement of the pool because Paragraph 6 is applicable only when the pool is located “as per plans”.
We find that appellees’ arguments are well founded and correct. The record clearly shows that the Kittoks initially did not want a pool because they believed that a “custom” pool would not fit into their backyard, because of the yard’s irregular shape, and because of the existing servi-tudes. The Kittoks only agreed to buy a swimming pool after they were shown plans for a custom pool which fit within their backyard and which did not encroach on the servitudes. It would be an absurd conclusion to find that, after having expressed such reservations so emphatically, that the Kittoks intended to “hold harmless” Catalina for its negligence in locating and constructing the swimming pool so that it did encroach on the servitude.
Appellant also cites in his brief LSA-R.S. 9:2771, which provides as follows:
“No contractor shall be liable for destruction or deterioration of or defects in any work constructed, or under construction, by him if he constructed, or is constructing, the work according to plans or specifications furnished to him which he did not make or cause to be made and if the destruction, deterioration or defect was due to any fault or insufficiency of the plans or specifications. This provision shall apply regardless of whether the destruction, deterioration or defect occurs or becomes evident prior to or after delivery of the work to the owner or prior to or after acceptance of the work by the owner. The provisions of this Section shall not be subject to waiver by the contractor.”
Because the pool was not located according to the plans, which we find the contractor did “cause to be made” by the recommendation by Wenzel, their employee, of the architect who drew the plans, that LSA-R.S. 9:2771 has no applicability to these proceedings.
Accordingly, we find that the trial court did not err in failing to place responsibility for the location of the pool upon owner-appellees and in dismissing appellant’s claim to be paid for the work performed, because the work was so defective (after much advance warning) as to be practically useless. Fortier v. Sessum, 441 So.2d 1238 (La.App. 5 Cir.1983). Catalina’s actions in locating and constructing the pool is a defect which requires the removal of the pool and, therefore, renders the pool useless. Catalina argues that the defect can be repaired by relocating the wall of the pool which encroaches on the servitude and presented testimony in support of this contention. However, this remedy would destroy the unique configuration of the pool, which was the primary object of the contract (see discussion, infra). Because Catalina cannot cure the defect and still meet the primary object of the contract, it is not entitled to payment for the work it performed in constructing the pool. Indeed, the record reflects that the trial judge concluded that the improper location and construction was the sole fault and negligence of the appellant, Catalina. The trial judge’s conclusions in regard to these assignments of error depended largely on credibility calls that he made accepting the testimony of the Kittoks and rejecting that of Wenzel and Catalina’s other witnesses. This is a proper exercise of his wide discretion and we cannot say that he abused this discretion nor that he was manifestly erro *839 neous, especially in view of Wenzel’s inconsistent and equivocal testimony.
II. & III. AWARD OF DAMAGES
The appellant objects to the award of $10,000.00 for loss of use of the backyard and for embarrassment and also to the award of $6,500.00 for the removal of the swimming pool.
Appellant argues that the trial court’s award of $10,000.00 in nonpecuniary damages is erroneous as nonpecuniary damages are not compensable in a redhibition or breach of contract case.
LSA-C.C. art. 1934(3), in effect at the time of the confection of the contract, provided as follows:
3. Although the general rule is, that damages are the amount of the loss the creditor has sustained, or of the gain of which he has been deprived, yet there are cases in which damages may be assessed without calculating altogether * * on the pecuniary loss, or the privation of pecuniary gain to the party. Where the contract has for its object the gratification of some intellectual enjoyment, whether in religion, morality or taste, or some convenience or other legal gratification, although these are not appreciated in money by the parties, yet damages are due for their breach; a contract for a religious or charitable foundation, a promise of marriage, or an engagement for a work of some of the fine arts, are objects and examples of this rule.
In Meador v. Toyota of Jefferson, Inc., 332 So.2d 433, 437 (La.1976), the Louisiana Supreme Court interpreted LSA-C.C. art. 1934(3) as follows:
It is evident that the proper interpretation of Article 1934(3), is not, as plaintiff contends, that nonpecuniary damages are allowable where the object is exclusively physical gratification. On the contrary, “convenience” in the source provision was not a contract object triggering the availability of nonpecuniary damages, but was, rather, along with religion, morality, and taste, one example of “purely intellectual enjoyment,” the intellectual enjoyment being necessary as a contract’s object before nonpecuniary damages became available.
We find the French source provision of 1934(3) in the 1825 Louisiana Civil Code, if not controlling, at least persuasive in our present interpretation of the article’s ambiguous counterpart in our 1870 Civil Code. While the foregoing interpretation does not allow nonpecuniary damages where the sole object is physical gratification, a proper interpretation of the entirety of Article 1934(3) does not in our view bar such damages in all instances where there exists as an object physical gratification. We believe that a contract can have “for its object” intellectual enjoyment, assuming that intellectual enjoyment is a principal object of the contract, notwithstanding that a peripheral, or incidental, or even perhaps concurrent object of the contract may be physical gratification.
Thus, we would interpret Article 1934(3) as follows: Where an object, or the exclusive object, of a contract, is physical gratification (or anything other than intellectual gratification) nonpecuni-ary damages as a consequence of nonful-fillment of that object are not recoverable.
On the other hand, where a principal or exclusive object of a contract is intellectual enjoyment, nonpecuniary damages resulting from the nonfulfillment of that intellectual object are recoverable. Damages in this event are recoverable for the loss of such intellectual enjoyment as well as for mental distress, aggravation, and inconvenience resulting from such loss, or denial of intellectual enjoyment.
In the present case, the record clearly shows that a principal object of the contract in this case was the appellees’ desire for a custom-shaped pool of unique design. The Kittoks ultimately planned to build a cabana and landscape the backyard, with the intent of creating a yard which would complement their home. Mrs. Kit-tok also testified that she belonged to a garden club and believed the pool would be an asset and that the pool and yard would *840 be used by her husband for entertaining. Accordingly, the record clearly supports a finding that the contract has, as a principal object, intellectual gratification and, therefore, the trial court did not err in awarding nonpecuniary damages. Compare B & B Cut Stone Co., Inc. v. Resneck, 465 So.2d 851 (La.App. 2 Cir.1985) (contract to install a marble fireplace); McManus v. Galaxy Carpet Mills, Inc., 433 So.2d 854 (La.App. 3 Cir.1983) (contract to furnish and install carpet); Whitener v. Clark, 356 So.2d 1094 (La.App. 2 Cir.1978) writ den. 358 So.2d 638, 641 (La.1978) (contract for construction of a distinctly-planned residence). The Kittoks have endured the “mess” caused by the appellant’s negligence in their backyard and have been deprived of its use as they planned for some 9 years while this litigation dragged on, due, in substantial part, to the fact that appellants changed attorneys some four times — and each new attorney would request delays to investigate the case, take pictures, do discovery, etc.
Nevertheless, appellants argue that the Kittoks should have minimized their damages by filling in the pool. The trial judge undoubtedly considered this argument and concluded otherwise and we see no error and find no abuse of his discretion in the award of $10,000 for this aspect of the case.
Appellant also objects to the award of $6,500.00 for the cost of removing the pool and refilling the hole. As the record reflects, Catalina breached its contract with the Kittoks by locating the swimming pool so that it encroached on L.P. & L.’s servitude in the Kittoks’ backyard. Catalina has suggested that the breach can be corrected by relocating the wall of the pool. However, as previously discussed, to do so would destroy the unique configuration of the pool, a primary object of the contract. Therefore, the defect is such that it cannot be cured except by removal of the swimming pool.
Louis Deutschmann, qualified as an expert in general contracting, testified that it would cost approximately $6,500.00 to remove the pool and refill and relandscape the Kittoks’ backyard. His testimony was uncontroverted. Accordingly, the trial court did not err in awarding this amount for this purpose.
For the above-discussed reasons, the judgment of the trial court is affirmed. All costs of this appeal are assessed against appellant.
AFFIRMED.

. Defendants also filed third party demands against Frederick Von Osthoff and J.J. Krebs and Son's, Inc., surveyors of the property. Pursuant to a motion for summary judgment, the claim against Krebs was dismissed. Defendants could not locate Von Osthoff to serve him with notice of trial and stated that they were willing to proceed to trial without his presence.