574 So.2d 557 (1991)
Iray YOUNG, Plaintiff-Appellee,
v.
FORD MOTOR CO., INC., et al., Defendants-Appellants.
No. 89-817.
Court of Appeal of Louisiana, Third Circuit.
February 6, 1991.
Writ Granted April 26, 1991.
*558 Felix A. De Jean, III, Opelousas, for plaintiff-appellee.
Onebane, Donohoe, Bernard, Torian, Diaz, McNamara & Abell, James M. Dill, Lafayette, for defendants-appellants.
Before GUIDRY, STOKER and DOUCET, JJ.
GUIDRY, Judge.
The issue on this appeal is one posed but left unanswered by our Supreme Court in Lafleur v. John Deere Co., 491 So.2d 624 (La.1986), i.e., "whether a new car purchase contract and breach thereof is governed by the new C.C. art. 1998, or rather, as relates to damages, by C.C. art. 2315".
This suit in redhibition was filed by plaintiff, Iray Young, purchaser of a 1988 Ford Supercab pickup truck, against Bordelon Motors, Inc. (the seller, hereafter Bordelon) and Ford Motor Company (the manufacturer, hereafter Ford) after many unsuccessful attempts to repair the defective vehicle. The matter was tried to a jury which rendered a verdict casting Bordelon and Ford in solido for the sum of $19,910.07 (cost of vehicle plus rental charges) and against Ford only for $7,900.00 in attorney fee's and $3,750.00 in mental anguish damages. A judgment in conformity with the jury's verdict was signed on May 1, 1989. Ford and Bordelon appeal questioning only the award for emotional distress.[1]

FACTS
On January 15, 1988, Iray Young purchased a new 1988 Ford Supercab pickup truck from Bordelon. He returned to Bordelon three days later complaining of an engine knock. Over the next three months Bordelon replaced an ignition switch and two air pollution pumps, repaired peeling hood paint, repaired defective brakes, resurfaced the heads and replaced the short block assembly.[2] Following installation of the new block assembly, Bordelon replaced a missing spring in the shift/steering column. Shortly thereafter, plaintiff returned to Bordelon complaining of a "grinding vibration" and complained that the truck was sluggish and smelled of gas fumes. No further repairs were undertaken by Ford or Bordelon. This suit followed.
At trial, plaintiff testified that as a result of the problems with this truck, he became very aggravated and upset. Dr. John Fruge, Young's physician, testified that during the period following Young's purchase of the truck he noticed Young becoming visibly upset. He stated that Young complained that he couldn't sleep, could not concentrate and was having problems with his libido. Dr. Fruge prescribed a tranquilizer anti-depressant to help Young deal with his emotional problems. The record supports the trial court's finding that plaintiff suffered emotional distress as a result of the hassles associated with this defective truck.

THE ISSUE ON APPEAL
An award of damages for nonpecuniary loss for breach of contract is controlled by La.C.C. art. 1998, which provides:

*559 "Damages for nonpecuniary loss may be recovered when the contract, because of its nature, is intended to gratify a nonpecuniary interest and, because of the circumstances surrounding the formation or the nonperformance of the contract, the obligor knew, or should have known, that his failure to perform would cause that kind of loss.
Regardless of the nature of the contract, these damages may be recovered also when the obligor intended, through his failure, to aggrieve the feelings of the obligee."
This article replaces former La.C.C. art. 1934(3). Former La.C.C. art. 1934(3), as interpreted in Meador v. Toyota of Jefferson, Inc., 332 So.2d 433 (La.1976), "allows recovery of damages for nonpecuniary losses only for breach of a contract which has `intellectual enjoyment' as its principal or exclusive purpose". Comment (a) to La. C.C. art. 1998.
In Lafleur, which is our Supreme Court's last pronouncement on the subject, the court reaffirmed the continuing viability of the legal principle enunciated in Meador, stating:
"So, today, nonpecuniary loss may not be recovered in a simple breach of contract case unless the contract is intended to gratify a nonpecuniary interest. The only changes to La.Civ.Code art. 1934(3) were to substitute a contract "to gratify a nonpecuniary interest" for a contract having "for its object the gratification of some intellectual enjoyment," and the specific inclusion in the new Article 1998 of the requirement that "because of the circumstances surrounding the formation or the nonperformance of the contract, the obligor knew, or should have known, that his failure to perform would cause that kind of loss" and which hardly adds anything. The addition of the latter requirement, one which was perhaps only implicit in C.C. art. 1934(3) and its interpretation in Meador, and the substitution of gratification of nonpecuniary interest for gratification of some intellectual enjoyment, serve to clarify and make more certain under the law the Meador resolution of the pertinent legal issue under the former article 1934(3)...." (footnote omitted)
The record makes clear that the contract between Young and Bordelon for the purchase of the 1988 Ford truck was not intended for gratification of a nonpecuniary interest. Bordelon testified that he purchased the truck for use in connection with his operation of a service station and for use in his farming operations.
In Lafleur, our Supreme Court recognized that damages for nonpecuniary loss (mental pain and anguish damages) are not barred in cases sounding in contract if there are elements of delictual conduct "distinct from and/or in addition to breach of a conventional obligation". In that connection, the court stated:
"A normal breach of contract not involving delictual conduct is governed, as respects damages, by La.Civ.Code art. 1934(3) (at present CC 1998). There are, however, contract situations where there occur damages by reason of fault which are distinct from and/or in addition to breach of a conventional obligation. Such is the case where a product is sold which is not reasonably safe for its intended use, and the purchaser or consumer suffers damages as a consequence. Weber[3] held that breach of the obligation (to produce and deliver a product which is reasonably safe for its intended use) gives rise to a cause of action in favor of the purchaser of the product not only to demand return of the purchase price but also, because the manufacturer is presumed to know of defects in its products, to demand all damages caused by the defect. In this latter respect the manufacturer is charged with repairing all damages, just as is the tort-feasor. The law imputes knowledge of defects in a product to its manufacturer so that his act of delivering a defective thing "knowing" of the defect gives rise to delictual as well as contractual liability. Philippe v. Browning Arms Co., 395 So.2d 310, 319 (La. *560 1981); Chappuis v. Sears Roebuck & Co., 358 So.2d [926] at 929 [ (La.1978) ]." (footnotes omitted)
As aforestated, in Lafleur, supra, our Supreme Court posed but left unanswered the following:
"But what about the product which is not reasonably safe, but rather simply useless, that is, it contains a vice or defect which qualifies under C.C. art. 2520 (a "vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice") and the seller knows of the vice (or impliedly does) and omits to declare it (La.Civ.Code art. 2545)? And what of the case distinct from Weber and its progeny in that the user has not suffered personal injury but rather just economic, or nonpecuniary loss? Does such a case, like Weber and Chappuis qualify as delictual with the customary tort damages being allowed, including mental pain and anguish? Is Deere in this case, vendor of a useless grain drill, relative to the allowance and extent of damages, a simple obligor who under La.Civ.Code art. 1934(3) owes nonpecuniary damages only if it is found that his contract had for its object the gratification of some intellectual enjoyment? Or is Deere, like the Weber type manufacturer, essentially a tort feasor with obligation to pay tort damages including mental pain and anguish?
These are tough questions. The answer, for instance, would tell the intervenors, the Motor Vehicle Manufacturers Association of the United States, Inc., and the Product Liability Advisory Council, Inc., whether a new car purchase contract and breach thereof is governed by the new C.C. art. 1998, or rather, as relates to damages, by C.C. art. 2315. The resolution of these questions may ultimately involve line drawing by this Court, for in theory at least there is legal justification for deciding a) especially if personal injury is not involved, that the Legislature has clearly spoken to contract cases and said in C.C. art. 1998 that nonpecuniary damages are to be allowed only when the contract is intended to gratify a nonpecuniary interest, or conversely, b) although contractual, the manufacturer's duty is in tort as well, even where the fault is simply in performance of a contract and the attending damages merely pecuniary...." (footnote omitted)
We have contemplatively considered this vexing issue and ultimately conclude that in this case, which does not involve personal injury and/or a product unreasonably dangerous in normal use, plaintiff is not entitled to nonpecuniary damages and the trial court erred in awarding same.
In our view, a manufacturer in a simple contract case, not involving personal injury, whose only tortious conduct derives from its presumed knowledge of the defects in its product and therefore its presumed intentional placing of a defective product into the stream of commerce, should not be assessed damages pursuant to C.C. art. 2315. Rather, in such cases, damages should be awarded as in normal breach of contract cases pursuant to C.C. art. 1998.
Imputation of knowledge of defects in a product to the manufacturer, of long-standing in our jurisprudence, has been consistently applied in awards of C.C. art. 2315 damages in personal injury cases involving products determined to be unreasonably dangerous or not reasonably safe for their intended purpose. Weber, supra, Philippe, supra; Chappuis, supra. On the other hand, we know of no case where our Supreme Court has imputed such knowledge to a manufacturer so as to award nonpecuniary damages for a manufacturer's delivery of a defective product which is not unreasonably dangerous or unsafe in normal use, but merely useless or its use so inconvenient and imperfect that it must be supposed that the buyer would not have purchased it had he know of the defect, i.e., a simple redhibitory action. In the latter cases, we conclude that damages should be assessed pursuant to C.C. art. 1998. To decide otherwise would be to ignore the traditional civilian distinction between contractual and delictual fault. Note, Lafleur *561 v. John Deere Co.: No Recovery of Delictual Damages for the Sale of a Useless Product, 48 LLR 183 (1987). Although this traditional civilian distinction may be said to have been ignored by our Supreme Court in Weber, Philippe and Chappuis, these cases all concerned products determined to be unreasonably dangerous in normal use; the use of the products caused personal injury; and, as noted by the Lafleur court, possessed significant delictual aspects. Also significant is the fact that the legislature, in its recent revision of the La.Civil Code's section on obligations (Act 331 of 1984), refused to provide more generous contractual damages.
Although as the Lafleur court observed, theoretically there is legal justification for a decision either way, we believe the proper resolution to be that, where personal injury is not involved, La.C.C. art. 1998 applies and nonpecuniary damages are not allowable unless the contract is intended to gratify a nonpecuniary interest. See concurring opinion by Justice Marcus in Lafleur.
For these reasons, we reverse that portion of the trial court's judgment which awards plaintiff, Iray Young, $3,750.00 in mental anguish damages and amend the trial court's judgment to delete such award. In all other respects, the judgment of the trial court is affirmed. Appellee is cast with all costs of this appeal.
AFFIRMED AS AMENDED.
NOTES
[1] Although Bordelon appealed it was not cast for mental anguish damages.
[2] Replacing the short block assembly involved replacing the pistons, piston rods, pins, bearings and the block itself.
[3] Weber v. Fidelity & Casualty Ins. Co., 259 La. 599, 250 So.2d 754 (1971).