595 So.2d 1123 (1992)
Iray YOUNG
v.
FORD MOTOR COMPANY, INC. and Bordelon Motors, Inc.
No. 91-C-0561.
Supreme Court of Louisiana.
March 2, 1992.
*1124 Felix A. DeJean, III, Michael K. Leger, Opelousas, for applicant.
James M. Dill, Timothy John McNamara, Onebane, Donohoe, Bernard, Torian, Diaz, McNamara & Abell, Lafayette, Gary L. Hayden, Dearborn, Mich., for respondents.
Michael Thomas Pulaski, Ernest Paul Gieger, Jr., Robert William Maxwell, New Orleans, for amicus curiae Product Liability Adv. Coun.
CALOGERO, Chief Justice.
We granted a writ of review in this case to determine whether the purchaser of a defective or useless vehicle which has not caused physical injury can recover damages for emotional distress. For the reasons which follow, we conclude that such purchasers can recover mental anguish damages caused by purchase of the defective product even though the product is not unreasonably dangerous and they have not sustained physical injuries, but only if the requirements of Louisiana Civil Code articles 2545 and 1998 are satisfied. Article 2545 addresses the seller's liability for a product which contains a redhibitory defect, while Article 1998 concerns the availability of nonpecuniary damages in breach of contract cases.
Article 1998 permits recovery of damages for nonpecuniary loss where the obligee intends to gratify interests both pecuniary and nonpecuniary or where the interest is exclusively nonpecuniary. In either situation, however, the nature of the contract (including the facts and circumstances attending its formation) must demonstrate that gratification of the nonpecuniary interest constitutes a significant interest. In this case, plaintiff was properly denied recovery for emotional distress because the evidence at trial did not indicate that a significant objective of plaintiff's in purchasing the pickup truck was gratification of a nonpecuniary interest.
The question here, whether mental anguish damages are recoverable in a redhibition action by a plaintiff who purchases a simply defective, and thus useless, product which does not cause personal injury, was left unanswered in Lafleur v. John Deere Co., 491 So.2d 624 (La.1986). The courts of appeal have split when presented the same question, some holding that mental anguish damages are available in non-injury situations, and others holding the opposite, which we discuss in greater detail below.
It was regarding the purchase of a new pickup truck, purportedly a "lemon," that the jury in this case awarded damages for mental anguish, as well as recovery of the purchase price, rental charges, and attorney's fees. The court of appeal reversed the district court's judgment with respect only to the $3,750.00 award for mental anguish damages, for the reason that the product was not unreasonably dangerous and the case did not involve personal injury. 574 So.2d 557 (La.App.3d Cir. 1991). The court construed what had taken place as simply a breach of contract. Focusing on the distinction between the tort aspect of product liability cases and the codal requirements pertaining to breach of implied warranty in contract, the court of appeal concluded that "in a simple contract case, not involving personal injury, whose only tortious conduct derives from its presumed knowledge of the defects in its product and therefore its presumed intentional placing of a defective product into the stream of commerce, should not be assessed damages pursuant to C.C. art. 2315. Rather, in such cases, damages should be awarded as in normal breach of contract cases pursuant to C.C. art. 1998."
As mentioned above, different circuit courts of appeal have disagreed on whether mental anguish damages could be recovered in breach of contract cases. For example, in the span of one year, the fourth and second circuits concluded differently on the issue of nonpecuniary damages in cases presenting essentially the same factual situation. In Catalanotto v. Hebert, 347 So.2d 301 (La.App. 4th Cir.1977), the fourth circuit denied mental anguish damages for breach of a contract to build a home, finding that the breach of a contract to build a home was not one which had as an object gratification of intellectual enjoyment. (the terminology under Meador v. *1125 Toyota of Jefferson, Inc., 332 So.2d 433 (La.1976)). Conversely, in Whitener v. Clark, 356 So.2d 1094 (La.App. 2d Cir.), writ denied, 358 So.2d 638 (La.1978), the second circuit awarded nonpecuniary damages for the breach of a contract to build a home stating, in response to the contractor's contention that Catalanotto precluded such recovery, that: "We do not interpret Meador as did Catalanotto." Id. at 1098. For a thorough analysis of the different circuits' handling of nonpecuniary damage recovery in cases which do not involve personal injuries, see Gary P. Graphia, Comment, Nonpecuniary Damages: A Guide to Damage Awards Under Louisiana Civil Code Article 1998, 50 La.L.Rev. 797, 798 (1990).
In the present case, Iray Young, a forty-nine year old service station owner, purchased a 1988 Ford Supercab pickup truck from Bordelon Motors, Inc. on January 15, 1988 for use in connection with his service station and for recreation and pleasure. Within three days of the purchase, Young had returned to the dealer complaining about one of a number of major problems that surfaced with the truck and which subsequently prompted this redhibition action for rescission of the sale, attorney's fees, and damages for mental pain and anguish.[1]
During this time, Young's medical doctor and friend, Dr. John Fruge, testified that the truck had caused Young problems with sleeping, concentrating, and even sex. He noted that Young became tense, angry and frustrated during this period and that this developed into depression for which Dr. Fruge prescribed a combination tranquilizer and antidepressant. The court of appeal stated that "the record supports the trial court's finding that plaintiff suffered emotional distress as a result of the hassels [sic] associated with this defective truck."
The case was tried to a jury which rendered a verdict casting Bordelon and Ford in solido for the sum of $19,910.07 (cost of the vehicle plus rental charges) and against Ford alone for $7,900.00 for plaintiff's attorney's fees, and the now disputed $3,750.00 in mental anguish damages. Although Bordelon Motors was not cast for any part of the $3,750, it joined Ford in the appeal which questioned only the $3,750 mental anguish damages.
Young initially asserted his claim under the redhibition articles, LSA-C.C. art. 2520 et seq., then later filed a supplemental and amending petition alleging a separate cause of action under LSA-R.S. 51:1941 et seq., commonly referred to as the "Lemon Law."[2] Neither the district court nor the court of appeal addressed plaintiff's asserted claims under this consumer protection statute. However, seeking relief under the "Lemon Law" in no way "limits the rights or remedies which are otherwise available to a consumer under any other law." LSA-R.S. 51:1946. These other remedies, of course, include redhibitory actions. See 27B West's Louisiana Statutes Annotated Title 51, Section 1946 and accompanying cross references.
*1126 This court has had no difficulty allowing mental anguish damages in cases where personal injury has resulted from defective products. For example, in Philippe v. Browning Arms Co., 395 So.2d 310, 319 (La.1980), we held that "[t]he seller's (manufacturer's) act of delivering a defective thing, when he knows of the defect, gives rise to delictual, as well as contractual liability."[3] This court explained that in cases of injury by defective products, "the duty of the manufacturer is fixed by that part of the Civil Code dealing with sales, but that recovery for the injury arises under Article 2315."
However, this case presents a different issue than the ones just discussed. It involves the sale of a product containing a redhibitory vice that has not caused physical injury. Additionally, it involves a situation where the plaintiff seeks to have the sale rescinded under the redhibition articles of the Civil Code and to secure recovery of mental anguish damages incident thereto. We therefore look first to the redhibition articles and then to the obligations articles pertaining to damages recoverable in breach of contract cases.
Redhibition is defined in LSA-C.C. art. 2520:
Redhibition is the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice.
Liability of the seller of a product which contains a redhibitory defect is set forth in Article 2545 (emphasis added):
The seller who knows the vice of the thing he sells and omits to declare it, besides the restitution of price and repayment of the expenses, including reasonable attorneys' fees, is answerable to the buyer in damages.

In Louisiana, sellers are bound by an implied warranty that the thing sold is free of hidden defects and is reasonably fit for the buyer's intended use. Rey v. Cuccia, 298 So.2d 840 (La.1974). A buyer of an automobile who asserts a redhibition claim need not show the particular cause of the defects making the vehicle unfit for the intended purposes, but rather must simply prove the actual existence of such defects. Crawford v. Abbott Automobile Co, 157 La. 59, 101 So. 871 (1924). Multiple defects can collectively form the basis of a redhibitory action even though many of the defects are minor or have been repaired. Cangelosi v. McInnis Peterson Chevrolet, Inc., 373 So.2d 1346 (La.App. 1st Cir.1979); Perrin v. Read Imports, Inc., 359 So.2d 738 (La.App. 4th Cir.1978). In situations where new vehicles present such defects as would render their use inconvenient and imperfect to the extent that the buyer would not have purchased the automobile had he or she known of the defects, the buyer is entitled to a rescission of the sale instead of merely a reduction in the price. Davidson v. New Roads Motor Co., Inc., 385 So.2d 319 (La.App. 1st Cir.), writ denied, 391 So.2d 454 (La.1980).
In LaFrance v. Abraham Lincoln Mercury, Inc., 462 So.2d 1291, 1294-95 (La. App. 5th Cir.), writ denied, 467 So.2d 531, 467 So.2d 532 (La.1985), the court held in that action to rescind the sale of a new car, that both the dealer and the manufacturer were liable for attorney's fees because the dealer was responsible for numerous inconveniences and imperfections that rendered the automobile unfit for its intended use. Moreover, a manufacturer is conclusively presumed to have knowledge of defects in the object it produces. George v. Shreveport Cotton Oil Co., 114 La. 498, 38 So. 432 (La.1905). Thus, because of this presumption of knowledge, the manufacturer "is deemed to be in bad faith in selling a defective product.... [and] is liable to a buyer for damages and attorney's fees in addition to the purchase price and expenses occasioned by the sale and those incurred for the preservation of the thing sold." Cox v. Lanier Business Products, Inc., 423 So.2d 690 (La.App. 1st Cir.1982), writ denied, 429 So.2d 129 (La.1983); LSA-C.C. *1127 art. 2545; Rey v. Cuccia, supra; Breaux v. Winnebago Industries, Inc., 282 So.2d 763, 770 (La.App. 1st Cir.1973).
What type or types of damages does Article 2545 contemplate? Does it include mental anguish damages unassociated with personal injury? Two approaches assist in answering this question: a historical review of Article 2545 and an examination of the structure of the Civil Code pertinent to the damages referred to in Article 2545.
The action of redhibition originated in Roman law to protect buyers of slaves and animals from corrupt dealers. Leonard Oppenheim, The Law of SlavesA Comparative Study of the Roman and Louisiana Systems, 14 Tul.L.Rev. 384, 399 (1940). This important aspect of our current law on sales (i.e., this system of implied warranty against latent defects and vices) was fully incorporated into Louisiana law. Id.
In Roman times, this doctrine originally applied primarily regarding the sale of slaves and animals, for latent defects such as diseases, tendency of the slave to run away, an animal's propensity for kicking or being difficult to ride. Clarence J. Morrow, Warranty of Quality: A Comparative Survey, 14 Tul.L.Rev. 327, 354 (1940). The basic purpose of the remedy was to return the parties to their original positions: to restore the status quo. The vendor had to return the price of the goods, plus interest, and any costs that the vendee sustained in preserving the goods. Id. at 356.
In Louisiana Civil Code of 1808, Article 66 stated:
The seller is bound to declare to the buyer the defects of the thing sold, as far as they are known to him, and if he does not do it, the sale shall be cancelled or the price shall be diminished according to the kind of defects, and the seller shall be liable to damages towards the buyer by the following rules.
Article 71 of the 1808 Code stated:
If the seller was acquainted with the defects of the thing, he is liable to all damages towards the buyer, besides the restitution of the price he may have received.
Thus, in Louisiana the vendee was protected against vices that were not apparent at the time of the sale. La.Civ.Code of 1825, arts. 2496-98. The seller in good faith had only to restore the price paid and any expenses incurred (Article 2509, La.Civil Code of 1825), while the seller in bad faith was also liable in damages. Article 2523, La.Civil Code of 1825.[4] The purpose of the redhibition action in Louisiana, as was the case in Roman law, has been to restore the status quo. Floyd W. Lewis, Comment, Warranty of Quality in Louisiana: Extent of Recovery under the Implied-In-Law Warranty, 23 Tul.L.Rev. 130, 131 (1948); Savoie v. Snell, 213 La. 823, 35 So.2d 745, 746 (1948).
It was in the early years of this century that this court first imputed knowledge of a product's defect to a manufacturer-vendor. George v. Shreveport Cotton Co., 114 La. 498, 38 So. 432 (La.1905); Doyle v. Fuerst & Kraemer, Ltd., 129 La. 838, 56 So. 906 (1911).[5] This jurisprudential rule has been considered "settled" since at least *1128 1953. William D. Brown, III, Note, SalesImplied WarrantyLiability of Producer, 13 La.L.Rev. 624, 627, 627 n. 21 (1953).
In contrast with the Roman and civilian principles, the English doctrine of caveat emptor, foreign to the civil law, long prevailed in the common law, affording little protection at all to vendees.[6] Gradually, the concept of "reliance" surfaced in order to enable a vendee to seek redress in a breach of warranty situation, but often only in the case of an express warranty. It was only in the 19th century that an implied warranty of merchantability found its way into the common law. Clarence J. Morrow, Warranty of Quality: A Comparative Survey, 14 Tul.L.Rev. 327, 334-35 (1940).
Thus, from a historical perspective, the civil law has always recognized and sought to remedy the problem of latent defects in goods by restoring plaintiffs to the same position they would have occupied had the redhibitory defect not caused the failed performance. Basically, we are referring here to the award of compensatory damages which some civilian commentators argue includes, in addition to pecuniary loss,[7] nonpecuniary loss as well, called dommage moral; that is, damage of a moral nature which does not affect a "material" or tangible part of a person's patrimony.[8]
*1129 The second approach helpful in determining what types of damages are contemplated by Article 2545 is an examination of the codal structure and, in particular, the evolution of La.Civ.Code article 1998. General guidance comes from the preliminary article in Title VII, Of Sale (the section containing the redhibition articles), Article 2438, which provides:
In all cases, where no special provision is made under the present title, the contract of sale is subjected to the general rules established under the title: Of Conventional Obligations.

Then, from Section 4, Title IV, Conventional Obligations or Contracts (which governs damages) we find Article 1994 instructive:
An obligor is liable for the damages caused by his failure to perform a conventional obligation.
And Article 1997 provides:
An obligor in bad faith is liable for all the damages, foreseeable or not, that are a direct consequence of his failure to perform.
Article 1998 then sets forth the requirements for the recovery of nonpecuniary damages:
Damages for nonpecuniary loss may be recovered when the contract, because of its nature, is intended to gratify a nonpecuniary interest and, because of the circumstances surrounding the formation or the nonperformance of the contract, the obligor knew, or should have known, that his failure to perform would cause that kind of loss.
Regardless of the nature of the contract, these damages may be recovered also when the obligor intended, through his failure, to aggrieve the feelings of the obligee.
There has been an abundance of discussion in the legal literature since the 1984 Obligations Revision, specifically regarding the Legislature's replacing former Article 1934(3) with current Article 1998.[9] This court has interpreted former Article 1934(3) in Meador v. Toyota of Jefferson, Inc., 332 So.2d 433 (La.1976), where an eighteen-year old plaintiff took her first car, damaged in a collision, to the car dealership for repair and did not get it back until seven months later. In that case, defendant contended that in order for plaintiff to recover nonpecuniary damages, the object of the contract must be exclusively intellectual enjoyment, rather than partially intellectual (now called nonpecuniary in the replacement article 1998) and partially physical (now called pecuniary). The court responded:
This Court has never adopted a strict view but has reached results favoring the broader interpretation of Art. 1934(3).... The contract's object [in an analogous case regarding a contract for a wedding dress] was not purely intellectual, but rather entailed features both physical (her need for comfortable clothing), and intellectual (her preference for style, or "taste," and concern with her appearance on her wedding day ...).
Id. at 435-36 (citations omitted). The court cited two other cases where "there existed both intellectual and physical gratification" and then reviewed the origin of Article 1934(3) including its mistranslation from the French source provision into the 1825 *1130 Louisiana Civil Code. Id. at 436. After lengthy discussion, the court concluded that:
While the foregoing interpretation does not allow nonpecuniary damages where the sole object is physical gratification, a proper interpretation of the entirety of Article 1934(3) does not in our view bar such damages in all instances where there exists as an object physical gratification. We believe that a contract can have "for its object" intellectual enjoyment, assuming that intellectual enjoyment is a principal object of the contract...
Thus, we would interpret Article 1934(3) as follows: Where an object, or the exclusive object, of a contract, is physical gratification (or anything other than intellectual gratification) nonpecuniary damages as a consequence of nonfulfillment of that object are not recoverable. On the other hand, where a principal or exclusive object of a contract is intellectual enjoyment, nonpecuniary damages resulting from the nonfulfillment of that intellectual object are recoverable. Damages in this event are recoverable for the loss of such intellectual enjoyment as well as for mental distress, aggravation, and inconvenience resulting from such loss, or denial of intellectual enjoyment.
Meador, 332 So.2d at 437 (italics in original; bold emphasis added). Thus, in Meador, we determined that plaintiff was not entitled to recover mental anguish damages, but only because she did not prove that the intellectual enjoyment of which she was deprived while denied her car for seven months was "a principal object of the contract to have the car repaired." Id. (emphasis added).[10]
Our interpretation of 1934(3) in Meador has been construed differently by a pair of commentators.[11] However, in this author's view (and, incidentally, this is how it was interpreted by H. Alston Johnson III in The Work of the Louisiana Appellate Courts for the 1976-1977 TermObligations, 38 La.L.Rev. 345, 346 (1978)),[12] the language did fairly express the following: 1) where *1131 the exclusive object of a contract is physical gratification, nonpecuniary damages are not recoverable; 2) where the exclusive object is intellectual enjoyment, nonpecuniary damages are recoverable; and 3) where there exists more than one principal object with one of them being intellectual enjoyment, nonpecuniary damages are recoverable.
After Meador, the Council of the Law Institute engaged in lengthy debate (during the obligations revision) over the revision of Article 1934(3). They had to decide (insofar as the recommendations they would make to the Legislature) under what circumstances nonpecuniary damages should be allowed upon breach of a contract. Minutes of the June and September 1981 Louisiana State Law Institute Council Meeting. The Reporter for the Obligations Law Revision Committee, Professor Saul Litvinoff, noted that confusion existed in the jurisprudence with respect to when nonpecuniary damages were recoverable. June Minutes at 8. He advocated that nonpecuniary damages be allowed for the breach of every kind of contract. The Council rejected that position, in part for fear of opening the door to punitive damage awards. June Minutes at 6, 8-11.[13]
The minutes reflect the Council members' confusion regarding whether they were overruling or preserving the rule established in Meador.[14] After several hours of debate, the Council conditionally adopted a draft of Article 1998, but scheduled additional review of the article for the September meeting.[15]
In September, the Council again considered several proposed drafts to this article in a lengthy discussion. September Minutes at 1. The secretary preparing these minutes summarized the discussion, and stated that "[t]he important policy decision *1132 was to limit nonpecuniary damages to those types of contracts that were made to gratify nonpecuniary interests." [Note that the decision was not to limit the availability of these damages to contracts made to gratify only nonpecuniary interests.][16] The Council had expressly considered whether they meant to restrict the recovery of nonpecuniary damages only to contracts where "the principal cause" was gratification of a nonpecuniary interest or whether it could also be a "secondary cause." Id. This inquiry concerned a distinction between one, and more than one object of a contract, not much dissimilar from Meador's consideration that there may exist multiple principal objects in a given contract. Professor Litvinoff, favoring the multiple object possibility, suggested that "object" or "nature" replace the word "purpose" in the prior, conditionally-accepted draft. The suggestion was accepted by the Council, and they replaced
"contract was made for the purpose of gratifying an interest of a nonpecuniary nature, ..."
with
"when the contract, because of its nature, is intended to gratify a nonpecuniary interest...."
September Minutes at 2 (emphasis provided).
Although Professor Litvinoff apparently desired a more liberal approach to the recovery of mental anguish damages, he was only partially successful. He accomplished the inclusion of the multiple objects or interests concept by expanding on the former, conditionally-accepted draft above, but in the long run managed only a compromise of his stated position with the addition of the delimiting clauses "because of its nature...." and
"because of the circumstances surrounding the formation or the nonperformance of the contract, the obligor knew, or should have known, that his failure to perform would cause that kind of loss."
We interpret the addition and phrasing of the former clause as adding a restrictive element to the recovery of mental anguish damages: The nature of the contract (including the facts and circumstances surrounding its formation) must reflect that the obligee intended to gratify a nonpecuniary interest.
While the Council intended that multiple objects or interests (pecuniary and nonpecuniary) may co-exist in a contract which might trigger mental anguish damages, they decided that not all cases involving breaches of contract would qualify for the recovery of mental anguish damages, contrary to what Professor Litvinoff had advocated. The only cases that would qualify for the recovery of this type of damages were those where the plaintiffs could show that they intended, at the time of contracting (and the nature of the contract supported such intention), to gratify a significant nonpecuniary interest.
We have said, in the former paragraph and elsewhere in this opinion, that the obligee's nonpecuniary interest must be "significant." As we said in Meador, this nonpecuniary interest must be more than "an incidental or inferred contemplation of the contracting parties." 332 So.2d at 437.
During the Revision process, the Council, and subsequently the Legislature, could easily have restricted the recovery of nonpecuniary damages to those contracts formed solely to gratify nonpecuniary interests. Indeed, the prior, conditionally-accepted draft of that article would have accomplished that objective. They did not choose to do so. Similarly, they could have chosen to expand recovery of these damages to all contract cases (even those whose exclusive object is to gratify pecuniary interests), as advocated by Professor *1133 Litvinoff.[17] They did not. Instead, the choice they made was to preserve the substance of source article 1934(3) as interpreted by Meador, thereby permitting recovery of nonpecuniary damages in situations where nonpecuniary interests constitute at least one of the significant interests that the obligee intended to gratify.[18] The latter might be classified as a hybrid, or mixed, situation where obligees who enter the contract to gratify both pecuniary and nonpecuniary interests are permitted the recovery of nonpecuniary damages.
Thus, under Article 1998, which is the controlling article for the type of damages referred to by the redhibition articles (specifically Article 2545), if it can be established that the obligee intendedand if the nature of the contract supports this contentionto gratify a significant nonpecuniary interest by way of the contract, and that the obligor either knew or should have known that failure to perform would cause nonpecuniary loss to the obligee, then the requirements for recovery of nonpecuniary damages are satisfied.
Although purchase of a new truck or car may be prompted by both the pecuniary interest of securing transportation and the nonpecuniary interest relating to enjoyment, taste, and personal preference of owning and driving the chosen vehicle, the nature of the contract is primarily pecuniary (unless other factors evidence a different conclusion)[19]. Contrast the contract of purchase made in a standard new car sale with a contract for purchase of an antique car that, while it might be driven on the streets, represents the obligee's desire to own, and perhaps to show, a distinctive, unique automobile. Or, contrast the traditional new car purchase contract with a contract for purchase of a specially-designed, custom-built vehicle.
In this case, the nature of the contract does not make it evident, nor do the facts and circumstances surrounding the formation of the contract demonstrate that Young purchased the new pickup truck from Bordelon Motors, Inc. for a significant nonpecuniary purpose. Although he testified that he wanted a larger cab area so that he could lie down on trips if his back started to bother him, that desire seemed more incidental in nature than that which would constitute a significant nonpecuniary interest in purchasing the truck. The rest of his testimony concerned the need to use the truck in his service station business to haul tires or to transport customers while their cars were being fixed. Even his plans for recreational use of the vehicle (i.e., fishing trips) constituted the pecuniary interest of requiring suitable transportation to haul his fishing boat.
The jury cast defendant for $3,750, finding in answer to interrogatories propounded by the trial judge that Young had suffered "substantial and extreme emotional distress." However, the jury verdict was not returned following a charge elucidating the law as we have found and recited it herein.[20] They simply determined in response *1134 to interrogatories that use of the vehicle by plaintiff caused him to suffer extreme emotional distress. Since they did not make the requisite determination that the plaintiff intended to gratify a significant nonpecuniary interest when he entered into the contract with Bordelon Motors, and because Gonzales v. Xerox, 320 So.2d 163 (La.1975) requires us to decide the case rather than remand it to the district court, we conclude from this record that Young did not make the requisite showing of having entered this contract with Bordelon Motors to gratify a significant nonpecuniary interest as Article 1998 requires for the recovery of mental anguish damages.

DECREE
For the foregoing reasons, the judgment of the court of appeal denying plaintiff Iray Young's recovery of $3,750 in mental anguish damages is affirmed, for the reasons given in this opinion.
AFFIRMED.
MARCUS and DENNIS, JJ., concur and assign reasons.
WATSON, J., concurs in result.
MARCUS, Justice (concurring).
I concur in the majority's result denying mental anguish damages in this case; however, I disagree with the majority's finding that the obligee's nonpecuniary interest need only be "significant" for an award of mental anguish damages. La.Civ.Code art. 1998 provides that damages for nonpecuniary loss may be recovered when the contract, because of its nature, is intended to gratify a nonpecuniary interest. I interpret the "nature" of the contract to mean that the principal object or cause of the contract (as opposed to merely a significant object or cause) must be to gratify a non-pecuniary interest before mental anguish damages are recoverable. The word "nature" is defined in Webster's New Collegiate Dictionary as "the inherent character or basic constitution of a person or thing." Likewise, article 1950 in the error articles of the civil code uses the word "nature" in a similar sense: "[e]rror may concern a cause when it bears on the nature of the contract...." [emphasis added]. Clearly, this article anticipates rescission for error that goes to the heart of the contract. Therefore, while a contract may have multiple causes, some or all of which may be a significant factor in entering into the contract, there must be one principal cause which defines the inherent character or nature of the contract. Thus, even assuming the plaintiff in the instant case had made a showing that he had a significant nonpecuniary interest in purchasing his truck, I would still deny recovery for mental anguish if it appeared the principal object of the contract was to purchase a truck for daily transportation purposes.
Accordingly, I respectfully concur.
DENNIS, Justice, concurring.
I respectfully concur.
There is no need to revisit Meador because the pertinent article of the Civil Code has been changed since that decision. It is legally incorrect for this court to consider itself in any way bound by the private discussions of members of the Law Institute because those proceedings are not part of legislative process or history. This case should be decided according to civilian methodology, as the legislature intended, by applying the principles of the Civil Code directly to the facts of the case.
Because the obligor was not in bad faith, and did not intend to aggrieve the feelings of the obligee, the obligee's recovery of nonpecuniary damages is governed by article 1997 which, in pertinent part, provides that "[d]amages for nonpecuniary loss may be recovered when the contract, because of *1135 its nature, is intended to gratify a nonpecuniary interest and, because of the circumstances surrounding the formation or the non-performance of the contract, the obligor knew, or should have known, that his failure to perform would cause that kind of loss." Thus, to recover, the obligee must prove that (1) the nature of the contract is such that reasonable persons would consider to be included within its intention the gratification of a nonpecuniary interest under some circumstances; (2) the circumstances surrounding the formation or the non-performance of the particular contract are such that the obligor knew or should have known that his failure to perform would cause the kind of nonpecuniary loss claimed; and (3) the obligee in fact suffered such nonpecuniary damage.
Applying these precepts, I conclude that, although the inherent character of the contract is such that gratification of nonpecuniary interests reasonably may have been intended, the plaintiff failed to prove that the defendant knew or should have known that failure to perform would cause the particular nonpecuniary loss claimed, viz., depression, insomnia and impotency. Although the obligor should have known from the circumstances surrounding the non-performance that its failure to perform would cause annoyance, frustration and even momentary anger, the obligor reasonably could not have been expected to anticipate the extreme psychogenic symptoms experienced by the obligee in this case.
NOTES
[1] The problems began with an engine knock. During the next three months, Bordelon replaced an ignition switch and two air pollution pumps, repaired peeling hood paint and defective brakes, had the heads resurfaced and the short block assembly replaced (including the pistons, piston rods, pins, bearings and the block itself). This latter repair took a month. After the new block was installed, Bordelon replaced a missing spring in the shift/steering column. Following this, Young returned with complaints of a "grinding vibration" and complained that the truck was sluggish and smelled of gasoline. By approximately one month after purchase, Young had already taken the truck into the shop eight to ten times. Following that month, he took it in once in March where it stayed until April and then three more times in April after Bordelon had supposedly fixed the engine trouble.
[2] LSA-R.S. 51:1944(A) as enacted by Act No. 228 of 1984 pertains to new car purchases when the vehicle contains a "nonconformity" which is not repaired by the seller after four or more attempts. It provides for replacement of the vehicle with a comparable one, or refund of the purchase price plus any amounts paid by the consumer at the point of sale and all collateral costs less a reasonable allowance for use of the vehicle. "Nonconformity" is defined as "any specific or generic defect or malfunction, or any defect or condition which substantially impairs the use and/or market value of a motor vehicle." LSA-R.S. 51:1941(7).
[3] See infra, note 5 and accompanying text for additional discussion regarding the jurisprudential principle of imputing knowledge of defects to manufacturers of the defective product.
[4] Article 2523 in the La.Civ.Code of 1825 was the source article of the current Article 2545.
[5] This jurisprudential principle was not entirely uniform as evidenced by the 1930 decision in Kodel Radio Corp. v. Shuler, 171 La. 469, 131 So. 462 (1930), when this court held that a radio manufacturer was in good faith, and "it is only where the seller knew of the defect in the thing sold and failed to declare it that he is answerable in damages, as well as return of the price and payment of the expenses, if the thing sold is fact defective." Id. 131 So. at 463. However, twenty years later, in Tuminello v. Mawby, 220 La. 733, 57 So.2d 666, 669 n. 1 (1952), the court stated: "It is questionable that the Kodel case repudiated or limited the Doyle case or the George case, but, if it did, we consider the Doyle and George cases sound and would refuse to follow the Kodel case here."

The law imputes knowledge of defects in a product to its manufacturer so that his act of delivering a defective thing "knowing" of the defect gives rise to delictual as well as contractual liability. Philippe v. Browning Arms Co., 395 So.2d 310, 319 (La.1981); Chappuis v. Sears Roebuck & Co., 358 So.2d 926, 929 (La.1978). The plaintiff need not prove negligence by the manufacturer; rather, the manufacturer may be liable even though it exercised all possible care in the preparation and sale of its product. Bell v. Jet Wheel Blast, 462 So.2d 166 (La.1985).
[6] "The jus civile gave the vendee relief in the case of fraud, express warranty and implied-in-fact warranty; whereas under caveat emptor in England originally the vendor was liable only if he had given an express warranty and knew it was false, whereupon the vendee had relied to his injury. Caveat emptor in this sense was never known in the Roman law." Clarence J. Morrow, Warranty of Quality: A Comparative Survey, 14 Tul.L.Rev. 327, 353 (1940).

See also Ronald L. Hersbergen, Unconscionability: The Approach of the Louisiana Civil Code, 43 La.L.Rev. 1315, 1367 (1983) (discussing that because this doctrine of caveat emptor which presupposes the parity of bargaining power between parties never applied in Louisiana, the Civil Code requires disclosures by the seller to ensure that the buyer's consent is freely given).
[7] "Pecuniary" is defined in Webster's as: "1: consisting of or measured in money" and "2: of or relating to money." Webster's Eighth New Collegiate Dictionary 837 (1979).
[8] La.Rev.Stat.Ann. art. 1998 (West 1987), Comment (b) (citing Saul Litvinoff, Moral Damages, 38 La.L.Rev. 1 (1977)). Professor Litvinoff describes these damages as:

In the French tradition, the expressions dommage moral and prejudice moral are commonly used to designate damage inflicted to interests or assets that are not exactly patrimonial. As is generally known, not all rights are of a patrimonial nature. Very important ones such as family rights or rights of personality are not regarded as part of a person's patrimony. The infringement of such nonpatrimonial rights, however, may give rise to claims for reparation which are clearly patrimonial assets. Therefore, to speak of nonpatrimonial damages is not perfectly accurate. Nor is it clear to speak of nonpecuniary damages since damages are commonly repaired in money.... There is no semantic obstacle to borrowing from the French tradition and speaking of "moral damages" to mean damage that cannot be technically viewed as sustained by a person's patrimony, or damage to an interest for which a current market-value cannot be readily ascertained, as is always the case when the injury sustained consists, in whole or in part, in the experience of a negative state of emotional distress.
Id. at 1 (citations omitted) (emphasis in original).
Additionally, in earlier opinions, this court has classified mental anguish damages as compensatory. In Jiles v. Venus Community Center Benev. Mut. Aid Ass'n, 191 La. 803, 186 So. 342, 345 (1939), this court awarded the parents of a deceased child money for mental anguish because the defendant failed to meet its obligation to render medical services. Although that case differs from the instant case because of the allegations of intentional infliction of mental anguish, this court nonetheless categorized mental anguish damages as compensatory:
In this State, mental anguish is recognized as a distinct element of damages and not merely an incident to be taken into consideration in addition to pecuniary loss. Such damages are considered as actual or compensatory. Graham v. Western Union Telegraph Co., 109 La. 1069, 34 So. 91 [1903]; Lewis v. Holmes, 109 La. 1030, 34 So. 66, 61 L.R.A. 274 [1903].
In Vogel v. Saenger Theatres, 207 La. 835, 22 So.2d 189, 192 (1945), which involved the breach of contract in the sale of a theatre ticket, we distinguished Louisiana's law regarding recovery of mental anguish damages from the common law at that time. After quoting Article 1934(3), we stated:
Obviously, therefore, the distinction between the law of this state and that of most of the other jurisdictions, relative to the right of a theatre ticket purchaser to recover for mental suffering upon the proprietor's breach of contract without just cause, is found in the kind and character of the elements to be considered in the assessment of damages. In Louisiana consideration is to be given not only to pecuniary factors but also to intellectual or mental elements, in connection with the last of which recovery for humiliation and embarrassment is allowed, these constituting actual and legal damages. The prevailing common-law rule, on the other hand, does not recognize mental suffering from humiliation as an element of damage.
[9] Former Article 1934(3) provided:

Although the general rule is, that damages are the amount of the loss the creditor has sustained, or of the gain of which he has been deprived, yet there are cases in which damages may be assessed without calculating altogether on the pecuniary loss, or the privation of pecuniary gain to the party. Where the contract has for its object the gratification of some intellectual enjoyment, whether in religion, morality or taste, or some convenience or other legal gratification, although these are not appreciated in money by the parties, yet damages are due for their breach; a contract for a religious or charitable foundation, a promise of marriage, or an engagement for a work of some of the fine arts, are objects and examples of this rule.
[10] Although the language employed at the outset of the first sentence of the second paragraph of the foregoing quote is not a model of clarity, it did intend to relate that where the exclusive object of a contract is physical gratification (i.e., other than intellectual enjoyment), nonpecuniary damages are not recoverable. The possible ambiguity was created by the language "[w]here an object, or the exclusive object, of a contract, is physical gratification (or anything other than intellectual gratification) nonpecuniary damages as a consequence of nonfulfillment of that object are not recoverable." Meador, 332 So.2d at 437. The author (by coincidence the author of this opinion) used the disjunctive particle "or" not to express "a choice of one among two or more things," but in its alternate sense, "to clarify what has already been said," "in other words," or "that is to say." Black's Law Dictionary defines "or" as:

A disjunctive particle used to express an alternative or to give a choice of one among two or more things. It is also used to clarify what has already been said, and in such cases, means "in other words," "to-wit," or "that is to say." Peck v. Board of Directors of Public Schools for Parish of Catahoula, 137 La. 334, 68 So. 629, 630 [1915]; Travelers' Protective Ass'n v. Jones, 75 Ind.App. 29, 127 N.E. 783, 785 [1920].
Conversely, in the succeeding sentence in that same quote, the particle "or" is used in its familiar, disjunctive sense (and not set off by commas as in the preceding sentence) to give a choice among the two options: a principal object or an exclusive object. That sentence states:
"On the other hand, where a principal or exclusive object of a contract is intellectual enjoyment, nonpecuniary damages resulting from the nonfulfillment of that intellectual object are recoverable."
[11] See e.g., Gary P. Graphia, Comment, Nonpecuniary Damages: A Guide to Damage Awards Under Louisiana Civil Code Article 1998, 50 La. L.Rev. 797, 798 (1990). See also Litvinoff's comments regarding his understanding of Meador's holding (i.e., limiting recovery of nonpecuniary damages to situations where the exclusive object of the contract is a nonpecuniary one) in the Law Institute Council Meeting Minutes of June 1981 (one example is excerpted, infra note 14).
[12] In that article, in contrast to Litvinoff's interpretation of Meador's holding, the author understood the majority in Meador not to be limiting the recovery of nonpecuniary damages to only those instances where the exclusive object of the contract is a nonpecuniary one, but rather:

The corrected translation [of Article 1934(3) ] convinced the court ... that nonpecuniary damages could not be awarded when the contract did not have for at least one of its principal objects some "intellectual enjoyment."
[13] Compensatory damages are not punitive damages, which are generally discretionary and rarely allowed in Louisiana. Punitive damages are awarded only when expressly provided by the Legislature. See e.g., La.Civ.Code arts. 2315.3 (awarding exemplary damages for defendant's wanton or reckless disregard of the public safety in the handling, storage or transportation of ultrahazardous substances) and 2315.4 (awarding exemplary damages for driving while intoxicated).

Mental anguish damages are compensatory in nature and must be adequately proven. Professor Litvinoff states that moral [i.e., nonpecuniary] damages are compensatory and that this idea "follows naturally from traditional views according to which the reason why damages are granted to the victim of a breach is to make compensation for a loss or to restore the balance broken by the obligor's failure to perform." Saul Litvinoff, Moral Damages, 38 La. L.Rev. 1, 27 (1977).
[14] The following excerpt from the debate is illustrative:

Saul Litvinoff: I still need one direction. The Reporter does not know whether the intention of the Council is to overrule Meador v. Toyota.
Truman Woodward [Chairman of the Council]: I believe that the Council is ready to overrule Meador but only to an extent that we do not open the door to punitive and other forms of damages.
Frank Middleton: There ain't no way. If we overrule Meador, we will open the door to other forms of damages.
Oliver Stockwell: I believe the way we voted was that we wanted to retain Meador.
Frank Middleton: I agree.
Cordell Haymon: I don't think that we should be bound to the most restrictive interpretation of Meador.
Truman Woodward: Mr. Frank Middleton, do you think we should move on whether or not we plan to overrule Meador?
Frank Middleton: I believe that if we are going to do it that is the only way we can do it. I am concerned with mixed contracts that have pecuniary damages as well as nonpecuniary damages.
Saul Litvinoff: If you worry about that, then that is inconsistent with Meador, since Meador is tending to say that there are no such things as mixed contracts.
Ben Miller: I still think that we should preserve Meador.
June Minutes at 11-12.
[15] The draft of Article 1998 conditionally adopted by the Council in June, 1981 read as follows:

Damages for nonpecuniary loss may be recovered when the contract was made for the purpose of gratifying an interest of a nonpecuniary nature, and when because of the circumstances surrounding the formation, or the breach, of a contract, the obligor knew or should have known that his failure to perform would cause that kind of loss. Likewise, such damages may be recovered when the obligor intended, through his breach, to aggrieve the feelings of the obligee.
June Minutes at 12 (emphasis provided).
[16] The minutes continue with:

"Other persons raised the following points. Some limitation was needed otherwise every breach of contract would raise the possibility of extensive damages. The obligor should be given some chance to protect himself. He should know that he may be subject to nonpecuniary damages. Thus, the second requirement [i.e., that the obligor knew or should have known that his failure to perform would cause that kind of loss] should be kept."
September Minutes at 1.
[17] On at least two occasions (as reflected in the June 1981 Minutes), Litvinoff responded affirmatively to queries about whether he wanted to have nonpecuniary damages available in all contract cases. June Minutes at 8, 10.
[18] We used the language "principal object" in Meador to emphasize that the object of the contract to which former Article 1934(3) referred (in the sense of the term's everyday usage as in "motive" or "goal," rather than the technical sense of "object" in Conventional Obligations, Chapter 6. "Object and Matter of Contracts," arts. 1971-77 of the Louisiana Civil Code), must be one of a substantial or serious nature. There was no compelling reason for the use of this term, nor does the present article (1998) even use "object," or the Meador designation "principal object," but requires instead that the "contract, because of its nature, [be] intended to gratify a nonpecuniary interest...."
[19] The use of the word "nonpecuniary" (and "pecuniary") flows from Article 1998, replacing the reference in former Article 1934(3) to "intellectual enjoyment". See supra notes 9 and 11 for more details regarding these terms. The term "physical" to represent the opposite of "intellectual enjoyment" was a jurisprudential creation. See, e.g., Meador, supra note 12.
[20] The jury charge stated the applicable law pertaining to damages as follows:

The plaintiff has made a claim for damages produced by the mental pain and anguish he allegedly suffered by owning and using the truck in this case. These damages are referred to in our law as non-pecuniary damages. Our law does not ordinarily permit recovery of these damages. But if the mental anguish is the product of extreme or substantial emotional distress then you may consider such an award. Mere inconvenience and aggravation caused by a defective automobile are not enough. Like any other part of the plaintiff's case, the extreme and substantial emotional distress must be proven by a preponderance of the evidence.
Record at 284-85.