597 So.2d 151 (1992)
Bernice MAYERHOFER, Plaintiff-Appellee,
v.
The THREE R'S INC., et al., Defendants-Appellants.
No. 90-516.
Court of Appeal of Louisiana, Third Circuit.
April 6, 1992.
Writ Denied July 1, 1992.
*152 Edwin Cabra, Leesville, for plaintiff-appellee.
F. Clay Tillman, Jr., Leesville, for defendants-appellants.
Before GUIDRY, DOUCET and KNOLL, JJ.
KNOLL, Judge.
This appeal addresses the damages which may be awarded in a suit for the rescission of a home building contract and whether nonpecuniary damages for inconvenience and mental anguish were properly awarded. The trial court made the following awards to Bernice Mayerhofer, the homeowner, against Three R's Inc. and Sarver Real Estate, Inc.: $10,000 for inconvenience and mental anguish; $4,000 for future repair; and $637 for rental reimbursement.
Three R's and Sarver contend on appeal that the trial court erred as a matter of law in awarding Mrs. Mayerhofer nonpecuniary damages for inconvenience and mental anguish. They also contend that the trial court erred in allowing Mrs. Mayerhofer to recover $4,000 damages for future repairs, and allowing her to recover a rental refund of $637. We affirm.

FACTS
The learned trial court fully developed the facts relative to the issues presented in its written reasons for judgment which we incorporate herein, in part:
"The plaintiff, Mrs. Bernice Mayerhofer, brought this suit for the rescission of a building contract, coupled with a claim for damages for inconvenience and mental anguish resulting from breach of contract. She also seeks the return of rental paid during the construction of the dwelling. Made defendants are the Three R's, Inc. and Sarver Real Estate, Inc., both domiciled in Leesville, Louisiana.
Prior to August, 1986, having heard that the church known as the House of Blessing was in need of a building, plaintiff, a widow, donated her used house to that *153 church. Although plaintiff was a native of Louisiana, she had resided in California for about forty years, and, after her husband's death, she had returned to Louisiana with her 16 year old daughter with the intention of retiring here.
Richard A. Sarver was pastor of the House of Blessing Church. He was also president of Sarver Real Estate and an officer of the Three R's. He and Mrs. Mayerhofer entered into negotiations for the construction of a new home to be built on the lot from which the donated house was to be removed. Those negotiations culminated in an agreement to buy and sell.
Sarver agreed to construct a National Homes residential building known as the Burchfield, with certain modifications. The original price was $65,000.00. With certain changes, the total was $69,033.19, which plaintiff punctually paid according to the unsigned addendum.
Although the contract contained a six month completion provision, Sarver assured plaintiff that such homes were usually completed within thirty days, and by no means more than forty-five days. Accordingly, Mrs. Mayerhofer vacated her house, and began renting on August 1, 1986. The rental transaction, also, was handled by Mr. Sarver.
After the house had been completed, ostensibly, Mrs. Mayerhofer became aware of numerous defects. A punch list, so-called, was drafted and those defects were substantially repaired by a carpenter, Billy Bush, albeit not so satisfactorily as if the work had been performed properly during the construction.
Mrs. Mayerhofer moved into the residence in February, 1987, and thereafter she discovered defective conditions as follows: some of the doors were so loose that they could not be secured or locked; the garage door was split in two; the cabinets in the kitchen failed to fit properly against the wall (Bush could not repair it properly); the upstairs bathroom leaked into the kitchen downstairs and the leaking caused the floor in the upstairs bathroom to buckle; the leaks caused the carpeting to fade; and the brickwork over the fireplace was markedly uneven, described by her as `a crooked wall'.
Mr. T.J. Gates, eminently qualified as a consulting civil engineer, including expertise in the concept, design, construction and maintenance of residential buildings, testified as to his findings regarding the construction deficiencies as follows:
(1) Misalignment of the walls, exterior and interior, some out of plumb as much as or more than two inches, and irregular brickwork;
(2) Some of the doors would not close properly, particularly those downstairs;
(3) The garage door would not close as of September, 1987, although it was better after Bush worked on it; it was split or cracked vertically;
(4) Misalignment of the bricks in the area of the fireplace and mantle, and the repair to correct this cosmetic defect would entail extensive repair work;
(5) The absence of weep holes in the brickwork.
He concluded that he had `severe reservations' as to whether the construction of Mrs. Mayerhofer's house would have met the minimum residential standards in the community, especially prior to the work by Bush; that this was one of the most sub-standard homes and the worst brickwork that he had seen.
On cross examination, he conceded, however, that the only conditions incapable of being corrected were the framing and the brickwork, and that this would not adversely affect the structural integrity or intended use of the building; that it would not be unfit for residential purposes.
By deposition, A.M. Thornton, a carpenter with many years' experience corroborated much of what Mr. Gates said. He opined that, as to the exterior, the workmanship was substandard, the walls were not plumb, and at one section of the east wall at the north end of the house there was a big bulge in the brick, resulting in a bow. Around the fireplace, he *154 said, the brick `was layed (sic) out of line and it wasn't near straight'. Several walls were out of plumb but only one was `real bad'. He also corroborated Mr. Gates as to the lack of weep holes, but was of the opinion that that could be corrected by drilling holes in the wall. Billy G. Bush, mentioned earlier, the carpenter who performed the remedial or renovative work, described the condition of the house as he found it. His testimony established, also, that sub-standard workmanship had been employed in the construction of this house. He found, e.g., no flashing throughout the house, a condition which did not meet `any kind of standards'. The wall by the kitchen cabinet was about three and one-half inches out of plumb, as well as numerous other conditions which, he said, should not exist in a new home." (Footnote omitted.)

NONPECUNIARY DAMAGES FOR BREACH OF CONTRACT
Three R's and Sarver contend that the trial court erred as a matter of law by awarding nonpecuniary damages for inconvenience and mental anguish as a result of a breach of contract to build a home.
This case presents us with an opportunity to address the award of damages for nonpecuniary loss since the Louisiana Supreme Court's recent pronouncement in Young v. Ford Motor Company, Inc., 595 So.2d 1123 (La.1992). Traditionally, it has been held that damages for nonpecuniary loss are not recoverable for the breach of a contract to build a home. Hageman v. Foreman, 539 So.2d 678 (La.App. 3rd Cir. 1989); Ostrowe v. Darensbourg, 377 So.2d 1201 (La.1979). But see Whitener v. Clark, 356 So.2d 1094 (La.App. 2nd Cir. 1978), writs denied, 358 So.2d 638, 641 (La. 1978); Hostetler v. W. Gray & Co., Inc., 523 So.2d 1359 (La.App. 2nd Cir.1988), writs denied, 531 So.2d 470, 471 (La.1988); and, Jack v. Henry, 128 So.2d 62 (La.App. 1st Cir.1961). For reasons enunciated in Young, we find that nonpecuniary damages for breach of a contract to build a home are no longer summarily disallowed.
LSA-C.C. Art. 1998 provides:
"Damages for nonpecuniary loss may be recovered when the contract, because of its nature, is intended to gratify a nonpecuniary interest and, because of the circumstances surrounding the formation or the nonperformance of the contract, the obligor knew, or should have known, that his failure to perform would cause that kind of loss.
Regardless of the nature of the contract, these damages may be recovered also when the obligor intended, through his failure, to aggrieve the feelings of the obligee."
Commenting on Art. 1998, the Supreme Court in Young at page 1129 stated:
"Thus, under Article 1998, which is the controlling article for the type of damages referred to by the redhibition articles (specially Article 2545), if it can be established that the obligee intended andif the nature of the contract supports this contentionto gratify a significant nonpecuniary interest by way of the contract, and that the obligor either knew or should have known that failure to perform would cause nonpecuniary loss to the obligee, then the requirements for recovery of nonpecuniary damages are satisfied.
Although purchase of a new truck or car may be prompted by both the pecuniary interest of securing transportation and the nonpecuniary interest relating to enjoyment, taste, and personal preference of owning and driving the chosen vehicle, the nature of the contract is primarily pecuniary (unless other factors evidence a different conclusion). Contrast the contract of purchase made in a standard new car sale with a contract for purchase of an antique car that, while it might be driven on the streets, represents the obligee's desire to own, and perhaps to show, a distinctive, unique automobile. Or, contrast the traditional new car purchase contract with a contract for purchase of a specially-designed, custom-built vehicle." (Footnotes omitted.) (Emphasis added.)
As we read the Supreme Court's pronouncement in Young, the standard to *155 be applied in granting damages for nonpecuniary loss, is whether the nature of the contract was to gratify a significant nonpecuniary interest by way of contract and that the obligor either knew or should have known that failure to perform would cause nonpecuniary loss to the obligee.
In determining whether the damages are pecuniary or nonpecuniary, we look to the nature of the contract.
In the case sub judice, the nature of the contract was to build a home. The record is void of any evidence that the nature of the contract would support a pecuniary interest of Mrs. Mayerhofer. Rather, the record evidence preponderates that the home was built for significant nonpecuniary interests of Mrs. Mayerhofer. She testified that this was to be the final home she would build and that the home would be something she could leave to her daughter who was sixteen years of age. She further stated that she wanted this home to be a place that her daughter could entertain friends and for it to be a house they could be proud of. The record clearly supports that the home was built for purely personal satisfaction and not for any pecuniary purpose.
The record evidence supports that Mrs. Mayerhofer suffered mental anguish and inconvenience because of defendants' breach of contract. The experts testified that the home as built by Three R's and Sarver would not meet the minimum acceptable standards for residential construction. As pointed out by T.J. Gates, a consulting engineer who was accepted as an expert in residential construction, Mrs. Mayerhofer's home was one of the most substandard, newly constructed homes he had seen, and it exemplified the worst brickwork he had encountered.
Moreover, because Mrs. Mayerhofer underwent surgery shortly after the house was constructed and was significantly debilitated afterwards, she was forced to climb the stairs to the second floor because the ground floor bathroom was totally inoperable.
Accordingly, we find the trial court properly awarded nonpecuniary damages for defendants breaching the contract to build Mrs. Mayerhofer's home.

REPAIRS
Three R's and Sarver contend that the trial court erred in awarding $4,000 for repairs.
The appropriate measure of damages resulting from the contractor's breach of the implied warranty of good workmanship is generally the cost of repairs when the thing can be repaired. LSA-C.C. Arts. 2762, 2769; Miller v. Thompson, 542 So.2d 96 (La.App. 1st Cir.1989), writ denied, 544 So.2d 407 (La.1989). Absent an abuse of discretion, an appellate court will not disturb a trial court's assessment of damages. Id.
In the case sub judice, the record is clear that Mrs. Mayerhofer proved that she has significant unresolved problems with the garage door, interior walls out of plumb, a leakage problem with the upstairs bathroom, and bowed exterior and interior brick walls. In proving her damages, she did not submit a dollar figure for the actual costs of repairs, but left this figure to be fixed by the wide discretion of the trial court. The trial court fixed this amount at $4,000. Under these circumstances, because the record so clearly supports that the defects are significant and will entail costly repair, we do not find that the learned trial court abused its wide discretion in awarding $4,000 for repairs, although the evidence for actual repair cost was not submitted.

RENTAL
Three R's and Sarver contend that the trial court improperly awarded Mrs. Mayerhofer a refund of $637 for rent she paid when construction exceeded the time agreed upon between the parties. They argue that there was no time limitation imposed in the contract between the parties.
The trial court concluded:
"... Mrs. Mayerhofer was led to believe that the house would be completed within two months. Mr. Sarver indicated to *156 her that it would be thirty to forty-five days until completion. Henry Shoults, Mr. Sarver's carpenter who was in charge of erecting the National Homes kit, testified on cross examination that the normal completion period should not have exceeded sixty days.
I am aware of the testimony of Mr. Sarver to the effect that construction did not begin until September, 1986, because the other house, that donated by Mrs. Mayerhofer to the Church, was not removed from the lot until then. Considering, however, that Mr. Sarver was in charge of both the removal of the house and the new construction, and that plaintiff had little, if any, control over either, that defense is hardly persuasive. Even assuming, moreover, that the construction could not have been initated earlier than September, through no fault of the builder, plaintiff was still required to pay rental for more than two months longer than she had reasonably anticipated. Accordingly, a remittitur of one-half of the rental, or $637.00, will be ordered."
After thoroughly reviewing the record of this matter, we cannot say that the trial court's determination of the rental owed Mrs. Mayerhofer was clearly wrong.
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to The Three R's Inc. and Sarver Real Estate, Inc.
AFFIRMED.
GUIDRY, J., dissents and assigns reasons.
GUIDRY, Judge, dissenting.
I cannot agree that our Supreme Court's decision in Young v. Ford Motor Company, et al., 595 So.2d 1123 (La.1992), dictates the recovery of mental anguish damages in this case.
Although I agree that a contract for the construction of a residence, by its very nature, is intended to gratify both pecuniary and nonpecuniary interests, the particular facts of this case do not support a finding that the nonpecuniary interests of the obligee are so significant as to warrant the allowance of damages for mental anguish.
As our Supreme Court observed in Ostrowe v. Darensbourg, 377 So.2d 1201 (La. 1979), the significant interest to be satisfied by a construction contract is the physical or pecuniary interests of obtaining a place to live, to provide shelter from the elements and to afford health and comfort for one's family in keeping with one's means.
Applying the principles enunciated in Young, supra, I conclude that although a contract to build a residence may be prompted by both the pecuniary interest of shelter and comfort and nonpecuniary interests relating to enjoyment, taste and personal preference as to design etc., the nature of the contract is primarily pecuniary unless other factors dictate a different conclusion. There are no factors present in this case which would dictate a different conclusion. The residence constructed for plaintiff is not distinctive in design but rather a pre-cut National Home. Also, the factors pointed to in the majority opinion to support a different conclusion, are not, in my view, significant or unusual but rather are factors which attend the construction of every new residence. In sum, if mental anguish damages are recoverable under the facts of this case, then such damages must be allowed in every case involving breach of a contract to construct a residence, a result clearly not supported or intended by Young.
For these reasons, I respectfully dissent.