428 So.2d 867 (1983)
James BAHAM d/b/a James Furniture Co.
v.
COMMUNITY MOTORS, INC., et al.
No. 82 CA 0474.
Court of Appeal of Louisiana, First Circuit.
February 22, 1983.
*868 Byard Edwards, Jr., Ponchatoula, for plaintiff-appellee.
Louis M. Phillips, Baton Rouge, for defendant-appellant Champion Motor Homes, Inc.
E. Wade Shows, Baton Rouge, for defendant-appellee Community Motors, Inc.
Carey J. Guglielmo and Richard Creed, Jr., Baton Rouge, for defendant-appellant Chrysler Corp.
Before LOTTINGER, COLE and CARTER, JJ.
COLE, Judge.
This redhibition suit arose from the following facts. Plaintiff James Baham purchased a Concord motor home from Community Motors, Inc., of Hammond, on April 25, 1979. The total price of the vehicle was $22,994.12.[1] Less than one month after the purchase, Mr. Baham brought the vehicle to Community Motors for repair of eleven items. Evidence at trial showed the motor home was brought in for repairs again in July of 1979, in August of 1979, twice in September of 1979, twice in October of 1979 and once in June of 1980. Because the motor home would not start, Mr. Baham had it towed into Community Motors in July of 1980.
In September of 1980 suit was filed against Community Motors, Champion Home Builders, Inc., (the manufacturer of the body and interior of the vehicle), and Chrysler Corporation (the manufacturer of the chassis and the engine). Community and Champion both filed third party claims against Chrysler. In addition, Community also filed a third party claim against Champion.
After trial on the merits the court rendered judgment in favor of plaintiff and against Champion and Chrysler. The first judgment was rendered on March 3, 1982, *869 and listed various categories of damages without giving any specific dollar amount. Chrysler and Champion both appealed from this judgment. The judgment was amended on April 26, 1982, to reflect the various amounts. There Chrysler and Champion were ordered to pay $13,423.11 as a return of the downpayment, $3,940.05 for the return of notes paid at $262.67 apiece, $3,097.59 in interest paid on the notes, $3,500 for attorney fees and $3,500 for the loss of utility of the motor home as a recreational vehicle. The total amount awarded plaintiff was $27,460.75.[2] In addition, Chrysler and Champion were ordered to pay Community $1,500 in attorney fees.
Chrysler and Champion both appealed and have raised three issues to be considered. One, whether or not plaintiff proved the motor home was defective. Two, assuming the defects were proven, whether or not the award was excessive. Three, whether or not the attorney fees awarded to Community Motors and to plaintiff were proper.
After examining the record we are convinced the motor home was defective in several aspects. Mr. Baham testified of the myriad problems he experienced with the vehicle. The complaints can be divided into three major categories: interior defects, engine problems, and generator trouble. The interior defects were the most numerous and consisted of problems such as cabinets and doors that would not stay latched, defective armrests and seats, an oven that would not light and problems with the running water. Most of these defects developed within the first few months of ownership. Although some were remedied temporarily, many of the problems reappeared eventually and plaintiff testified they existed at the time of the trial. Plaintiff also complained of the "motor cover" fitting loosely and therefore allowing a great deal of heat to enter the living area of the motor home.
Problems with the engine were also evident from the beginning. On the first repair order Mr. Baham complained of a "roar around the motor" which he stated was never remedied. In August of 1979 he reported the "cruise control" would disengage when he hit the slightest bump in the road. In September of 1979 he complained of the motor "killing." This problem was diagnosed as a shorted wire in the steering column and was repaired. In October of 1979 plaintiff complained the engine was "dying" frequently. In June of 1980 he reported a tapping noise coming from the motor. Shortly thereafter Mr. Baham took the motor home on a trip and complained the engine had stopped about ten times. He was able to get the vehicle back to his home where he left it for approximately six weeks. Since he was unable to start the engine, he finally had the vehicle towed to Community in July of 1980.
Problems with the generator (which powered the air conditioner and refrigerator) began in June of 1980. It would run sometimes and then suddenly cut off. There was some dispute at trial as to whether or not this problem had been corrected. Mr. Baham had testified in a deposition the generator had been repaired; at trial he stated it was still not working dependably.
Mr. Baham's testimony was corroborated by two other witnesses. One, Lisa Scott, a friend of Mr. Baham's, stated she had accompanied him on seven or eight trips in the motor home. She said each time there were so many difficulties as to render the trip unenjoyable. She confirmed his complaints about the defective cruise control, cabinets and doors. Due to the faulty generator, the refrigerator and air conditioning would not work. This was particularly inconvenient in the hot summer months.
The second witness was Dan Hawkins, a friend of Mr. Baham's who had borrowed the vehicle in May of 1980. He too complained *870 of problems with the drawers and cabinets, the cruise control and the generator. He drove the vehicle to the Lafayette area and because of the generator failure was forced to rent a hotel room for the night, rather than sleep in the motor home as planned. He stated he had added a quart of oil to the generator while in Lafayette and finally got it started by jumping it off from the engine's battery. The generator quit again shortly thereafter and when he checked the oil while in Baton Rouge he had to add three quarts. While en route to his home he noticed a clicking sound around the engine. He described the engine as "spitting and sputtering" and said it stopped three times. By driving only ten miles an hour he was able to deliver the vehicle back to Mr. Baham.
Defendant Community Motors rebutted plaintiff's claim with testimony by Wally Dees, the service manager. Mr. Dees stated the reason the vehicle would not run when Mr. Baham had it towed in was the battery cables on the engine battery were corroded. Mr. Dees testified he changed the battery cable ends, cleaned the battery posts, charged the battery and thereafter the engine started promptly. He and a Chrysler representative, Mr. J.T. Mills, drove the motor home in February or March of 1981 and found it to be in good working order.
Mr. Dees denied there were any serious problems with the generator and pointed out the generator was listed on a repair order for the first and only time in July of 1980, when the vehicle was fourteen months old and had 7,369 miles on it. He stated the oil and filter of the generator were changed at that time and the generator ran well. He pointed out that in spite of the numerous complaints made by Mr. Baham, the monetary value of the repair work done was rather low: $235.11 was billed out as warranty work to Champion and less than $50.00 was billed to Chrysler. He said the cruise control worked properly when he and Mr. Mills drove the motor home.
Community offered into evidence a "predelivery inspection form" provided by Champion to Community. The service personnel at Champion use the form as a guide to inspect various parts of the motor home, such as the plumbing, the water, the LP gas system and the chassis. Mr. Dees testified the check-list indicated all items were found to be satisfactory.
Glen Jones, a quality control analyst from Champion, testified he found the motor cover to have been improperly "locked." He remedied the situation by positioning it correctly. He did not try to start the generator at the time he inspected the vehicle but noticed its oil was quite dirty.
We note here there is some confusion about the meaning of the trial court's judgment. The amended judgment awards Mr. Baham $23,960.75, exclusive of attorney's fees, to compensate him for the defective vehicle. This amount is slightly more than the purchase price of the vehicle ($22,994.12). By granting this sum the judgment must have been intended to rescind the sale, although it is silent as to that matter. It would certainly be an inequity for Mr. Baham to recover more than he paid for the vehicle and also to retain ownership of it.
To prevail in an action for redhibition the purchaser must prove the thing sold is "... absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice." La.Civil Code art. 2520. Associates Financial Services Co. v. Ryan, 382 So.2d 215 (La.App. 3d Cir.1980). After carefully considering the evidence we conclude the vehicle was not so defective as to warrant rescission of the sale.
We reach this conclusion based on several factors. One, the evidence revealed the engine had apparently been repaired and was in good working order at the time of trial. Further, we cannot ignore the fact that at the time the vehicle was tendered to Community Motors it was fifteen months old and had more than 7,400 miles on it. It is also of some significance the first and only complaint concerning the generator was made after it had been used for a year and two months. These factors convince us the *871 trial court's judgment, whether it intended a rescission or not, was erroneous.
In a redhibition suit, the plaintiff may limit his demand for a reduction of price, when the defect in the thing is "... such as merely to diminish the value...." See La.Civil Code art. 2541.[3] Likewise, the judge has the discretion to decree a reduction of price in any redhibitory action. Art. 2543.[4] The evidence established the motor home was in fact diminished in value due to the numerous defects and was obviously of much lesser quality than one would expect of a $23,000 vehicle.
The reduction in price is determined by figuring the difference between the sale price and the price a reasonable buyer and seller would have agreed upon if they had known of the defects. Ball v. Ford Motor Co., 407 So.2d 777 (La.App. 1st Cir.1981). In Menville v. Stephens Chevrolet, Inc., 300 So.2d 858 (La.App. 4th Cir.1974), writ ref., 303 So.2d 186 (La.1974), the court noted there is no mathematical calculation as to this price. The appellate court there approved of the trial court's consideration of the cost of repairs, the numerous breakdowns, and the overall poor performance in relation to the performance expected. With these factors in mind, we conclude a fair price for the vehicle, had the defects been known, would have been some $7,500 less than plaintiff paid. This would mean the original purchase price should have been approximately $15,500 rather than the approximately $23,000 originally paid.
Finally, Champion argues Community is not entitled to attorney fees. Champion and Chrysler, as manufacturers of the Concord motor home, are in fact responsible for Community's attorney fees. This is so because a manufacturer is presumed to know the vices of the things he sells and can therefore never be in good faith as regards the defects. Associates Financial Services Co. v. Ryan, supra. As a bad faith seller, the manufacturer is responsible for the buyer's attorney fees. La.Civil Code art. 2545.[5] In the present context, the manufacturers are considered the sellers, and the dealership, Community Motors, as well as plaintiff, is considered a buyer. See Laughlin v. Fiat Distributors, Inc., 368 So.2d 742 (La.App. 3d Cir.1979).
Champion argues further the attorney fees of $3,500 awarded to plaintiff were excessive. We find no abuse of discretion in this award.
For the foregoing reasons, the judgment of the trial court is reversed insofar as it impliedly rescinded the sale of the vehicle and is rendered as follows:
The issue of attorney fees causes us to note, on our own, the related procedural matter. Although Community was named as a defendant on the main demand and then filed third party claims against the other two defendants, the judgment was silent as to Community's liability. (It simply awarded them attorney fees.) We must infer from this the court found Community to be a good faith seller who was unaware of the defects of the vehicle. None of the parties have contested this implicit finding and we find no reason to disturb this conclusion on appeal. However, the responsibility of a good faith seller is set forth in art. 2531 as follows:
"The seller who knew not the vices of the thing is only bound to repair, remedy or correct the vices as provided in Article *872 2521, or if he be unable or fails to repair, remedy or correct the vice, then he must restore the purchase price, and reimburse the reasonable expenses occasioned by the sale, as well as those incurred for the preservation of the thing, subject to credit for the value of any fruits or use which the purchaser has drawn from it.

"In any case in which the seller is held liable because of redhibitory defects in the thing sold, the seller shall have a corresponding and similar right of action against the manufacturer of the thing for any losses sustained by the seller, and further provided that any provision of any franchise or manufacturer-seller contract or agreement attempting to limit, diminish or prevent such recoupment by the seller shall not be given any force or effect." (Emphasis added.)
In the present case the seller has been unable to repair at least some of the defects and therefore should be required to restore part of the purchase price. However, as the second paragraph of the article states, the seller is entitled to indemnity from the manufacturer. Although the final result may be the same, it is more procedurally correct to cast Community Motors as a liable defendant and then to grant Community's third party demand against Champion and Chrysler. This procedural change makes Community's award of attorney fees more appropriate.[6]

DECREE
For the foregoing reasons, the judgment appealed is reversed insofar as it rescinded impliedly the sale of the vehicle, it is affirmed as regards its award of attorney fees, and in all other respects it is amended and recast as follows:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment on the main demand in favor of plaintiff, James Baham, and against the defendants, Community Motors, Inc. of Hammond, Champion Home Builders, Inc., and Chrysler Corporation, in solido, for the sum of $7,500.00, plus legal interest thereon from date of judicial demand, until paid.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment on the main demand in favor of plaintiff, James Baham, and against the defendants, Champion Home Builders, Inc. and Chrysler Corporation, in solido, for the additional sum of $3,500.00 as attorney fees.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment on the third party demands of Community Motors, Inc. of Hammond, and against third party defendants, Champion Home Builders, Inc. and Chrysler Corporation, in solido, for the reimbursement of any sums paid pursuant to the above award for which Community Motors, Inc. of Hammond is liable and has been cast; and for the additional sum of $1,500.00 as attorney fees.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the third party demand of Champion Home Builders, Inc. against Chrysler Corporation be and the same is hereby dismissed.
Champion Home Builders, Inc. and Chrysler Corporation are cast for all costs of court, same to be paid by them in equal proportions.
REVERSED IN PART, AFFIRMED IN PART, AMENDED AND RECAST.
NOTES
[1] Mr. Baham, who purchased the motor home in the name of James Furniture Co., traded in three vehicles and was given a credit for a down payment of $13,423.11. The balance of the price was financed, apparently by G.M.A.C.
[2] No mention was made of Community's liability or of their third party demands, the trial court apparently finding them to be in good faith as seller. Neither appellant has contested this determination nor has the procedural nightmare created by the timing and substance of the amended judgment or the failure to properly cast the parties been of particular concern to the litigants.
[3] Art. 2541. "Whether the defect in the thing sold be such as to render it useless and altogether unsuited to its purpose, or whether it be such as merely to diminish the value, the buyer may limit his demand to the reduction of the price."
[4] Art. 2543. "The purchaser who has contented himself with demanding a reduction of the price, can not afterwards maintain the redhibitory action. But in a redhibitory suit, the judge may decree merely a reduction of the price."
[5] Art. 2545. "The seller, who knows the vice of the thing he sells and omits to declare it, besides the restitution of price and payment of the expenses, including reasonable attorneys' fees, is answerable to the buyer in damages." See also, Rey v. Cuccia, 298 So.2d 840 (La. 1974); and Media Pro. Consult., Inc. v. Mercedes-Benz of N.A., Inc., 262 La. 80, 262 So.2d 377 (La.1972).
[6] See Lehn v. Clearview Dodge Sales, Inc., 400 So.2d 317 (La.App. 4th Cir.1981), writ denied, 406 So.2d 608 (La.1981); Borne v. Mike Persia Chevrolet Co., Inc., 396 So.2d 326 (La.App. 4th Cir.1981), writ denied, 401 So.2d 976 (La.1981).