**United States Court of Appeals**
**Fifth Circuit**
**F I L E D**
**February 28, 2007**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

_____

No. 06-30014
_____

RANDY ALSTON; KAREN ALSTON,

Plaintiffs - Appellees,

versus

FLEETWOOD MOTOR HOMES OF INDIANA INC,

Defendant - Appellant.

Appeal from the United States District Court
For the Western District of Louisiana

Before KING, GARZA, and OWEN, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Fleetwood Motor Homes of Indiana Inc. ("Fleetwood") appeals the district court's judgment

in favor of Randy and Karen Alston ("the Alstons") in a redhibitory action involving a recreational

vehicle ("RV") with a leaky roof.

I

The Alstons, who reside in southwest Louisiana, purchased a new RV from Fleetwood. A

month later, the Alstons drove the RV to a Fleetwood service center in Houston, Texas, for repairs.

Karen Alston testified that she told the service center about roof leaks at this time, although the work order for this visit does not mention any roof leaks. The service center addressed eighteen other complaints, including problems with a burning smell and the RV's backup camera and televisions. The following month, the Alstons, experiencing more difficulties, took the RV back to the same service center. On this visit, the work order reflects nine customer complaints, including ceiling leaks.

A few days after the service center completed the second set of repairs, the Alstons' attorney sent a demand letter to Fleetwood, complaining that the RV's roof continued to leak. In response, a Fleetwood representative traveled to Louisiana, picked up the RV, and transported it to the main Fleetwood facility in Indiana. There, Fleetwood installed a new roof on the RV.

Four months after receiving the repaired RV back from Fleetwood, the Alstons took the RV to the Fleetwood service center in Houston for additional repairs. The work order for this visit reflects ten customer complaints, including a leaky air conditioning unit. After determining that the leaky air conditioner had been caused by a drill bit left under a gasket while the RV was at the Indiana facility, the service center conducted repairs and returned the RV to the Alstons.

Approximately eight months later, the Alstons initiated the instant action, complaining that the RV continued to leak despite Fleetwood's efforts to fix it. They alleged that the RV's defects were redhibitory and sought a full refund of the $130,094 purchase price. During the bench trial, expert witnesses disagreed on the cause of the roof leaks: the Alstons' expert testified that the leaky roof was a manufacturer defect, while Fleetwood's expert opined that the leaks were caused by the Alstons' failure to properly maintain and replace the sealants as explained in the Owner's Manual.

Applying Louisiana law in diversity jurisdiction, the district court found that a redhibitory defect existed at the time the Alstons purchased the RV and awarded the Alstons $130,094 as the

return of the purchase price, interest, $3,205 in auto insurance premiums the Alstons had paid for the vehicle, $25,000 for mental anguish, $36,287 in attorney's fees, and $40 in expert fees. The district court also denied Fleetwood a credit for the Alstons' personal use of the RV) ) approximately 37,000 miles) ) during the time they owned the vehicle. Fleetwood appeals the district court's judgement and damages.

II

Fleetwood first contends that the district court erred in finding the leaky roof to be a redhibitory defect. We review the district court's finding for clear error. *See* FED. R. CIV. P. 52(a); *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573-75 (1985); *see also Green v. Benson and Gold Chevrolet*, 811 So.2d 970, 975 (La. Ct. App. 5 Cir. 2002) (explaining that the existence of a redhibitory defect is finding of fact). If the district court's findings are plausible in light of the record, viewed as a whole, we cannot reverse even if we would have weighed the evidence differently. *Anderson*, 470 U.S. at 573-74.

Redhibition is the avoidance of a sale on account of some vice or defect in the thing sold which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it had he known of the vice. LA. CIV. CODE ANN. art. 2520 (2005). In a suit for redhibition, the plaintiff must prove: "(1) the thing sold is absolutely useless for its intended purposes or that its use is so inconvenient that it must be supposed that he would not have bought it had he known of the defect; (2) that the defect existed at the time he purchased the thing, but was neither known or apparent to him; (3) that the seller was given the opportunity to repair the defect." *Dalme v. Blockers Mfd. Homes, Inc.*, 779 So. 2d 1014, 1028 (La. Ct. App. 3 Cir. 2001); *see* LA. CIV. CODE ANN. art. 2520 (2005).

-3-

Fleetwood argues that the Alstons did not meet their burden of proof on the second element))that the defect existed at the time of purchase. In support of this argument, Fleetwood claims that the Alstons' expert's testimony "was identical to and fully corroborated" their own expert's testimony as to the cause of the leaks, namely that leakage resulted from faulty sealants around vents and skylights.[1] Fleetwood further contends that, because the experts agreed that bad sealants caused the leaks, the evidence does not support the existence of a manufacturer defect; rather it was the Alstons' failure to properly maintain the sealants that caused the roof to leak.[2]

In making this argument, however, Fleetwood neglects the real difference between the opinion of their own expert and that of the Alstons' expert. While both testified that the leaks resulted from problems with sealants, their testimonies diverge on the *cause* of the problems with the sealants. Fleetwood's expert testified that the leaks were the Alstons' fault because they did not properly maintain the sealants as required by the owner's manual. The Alstons' expert, however, testified that he did not think the leaks were a customer care issue but rather a manufacturer defect; he also opined that Fleetwood should "take the home back." The district court, in finding a manufacturer defect, did not err in crediting one expert over another. *See Orduna S.A. v. Zen-Noh Grain Corp.*, 913 F.2d 1149, 1153-54 (5th Cir. 1990). Moreover, other evidence indicates that the leaky sealants were not likely a customer care issue, as Fleetwood never once—during any of the numerous service

---

[1]    Cross-examination of the Alstons' expert witness proceeded, in part, as follows:
Q:  . . . .  [y]ou've testified, based upon your expert testimony, that there is no other problem with this roof, other than sealants?
A: Correct.

[2]    Fleetwood's expert testified that the sealants were "dry, cracked. There were voids. It had shrunk, actually, almost nonexistent."

visits) ) informed the Alstons that they were improperly maintaining their RV's sealants.

Fleetwood also argues that the alleged defect was a series of leaks independent of each other and that no continuous leak existed since the time of purchase. Each time a leak appeared, Fleetwood claims to have fixed that leak, but then a different leak would show up in another area.

On a close review of the record, we find that the evidence supports the district court's conclusion that the leaks were continuous since the time of purchase. The Alstons' expert explained why the roof continued to leak in different places over time due to the fact that "[w]ater has a tendency to travel, especially . . . in a motor home with it moving 70 miles an hour . . . . You could have a leak up at the front and it would show up at the rear of the home." In light of this evidence, we conclude that the district court did not clearly err in finding the leaky roof to be a redhibitory defect existing since the time of purchase.

III

Fleetwood next argues that the district court erred in ordering rescission of the sale instead of a reduction in the original purchase price. As the decision to rescind the sale is a factual determination, see *Boudreaux v. Riley Buick, Inc.*, 415 So. 2d 970, 971 (La. Ct. App. 2 Cir. 1982), we review for clear error. *See* FED. R. CIV. P. 52(a); *Anderson,* 470 U.S. at 573-75.

Once the district court found the leaky roof to be a redhibitory defect, rescission of the sale was appropriate. *See* LA. CIV. CODE ANN. art. 2520 (2005); *Morrison v. Allstar Dodge, Inc.*, 792 So. 2d 9, 14-15 (La. Ct. App. 1 Cir. 2001). However, the district court had discretion instead to "limit the remedy of the buyer to a reduction of the price." LA. CIV. CODE ANN. art. 2541 (2005).

Citing cases where a court reduced the purchase price of the item instead of rescinding the sale, Fleetwood argues that the district court was obliged to exercise its discretion to limit the remedy

to the cost of fixing the leaky roof. *See, e.g., Baham v. Cmty. Motors, Inc.*, 428 So. 2d 867, 870-71 (La. Ct. App. 1 Cir. 1983); *Boudreaux*, 415 So. 2d at 973. Relying on the Alstons' expert's testimony on cross-examination where he said that he would have charged $2100 to repair the leaky roof, Fleetwood maintains that a rescission of the sale〕〕at 100-times the alleged cost of repairing the problem〕〕was unjustified.

Fleetwood, however, relies on cases where the vehicle in question was fixable and, indeed, had already been repaired. *Baham*, 428 So. 2d at 870-71 (reversing rescission with an engine had been repaired and was in good working order at the time of trial); *Boudreaux*, 415 So. 2d at 973 (affirming reduction in purchase price when all evidence confirmed that engine could be fully repaired). A reduction in purchase price is warranted only when the vehicle is able to be restored to its use. *See Ark-La-Tex Builders & Realty, Inc. v. Hoge*, 344 So. 2d 90, 90-91 (La. Ct. App. 2 Cir. 1977); *Alexander v. Burroughs Corp.*, 359 So. 2d 607, 610 (La. 1978) (noting "the object of the provisions governing redhibitory vices is to restore the purchaser, as much as possible, to the condition he enjoyed prior to the sale."). While the Alstons' expert testified that $2100 was his going rate as a RV roof repairman, he could not guarantee that he could fix the leak. Moreover, the Alstons' expert also recommended that Fleetwood take the RV back because the leaks were likely not reparable. The fact remained that after three arduous service visits, including one roof replacement, the RV continued to leak. Thus, the evidence, when viewed in its entirety, supports the conclusion that the roof was not fixable, and the district court did not clearly err in deciding that recision of the sale was the appropriate remedy.

IV

Fleetwood also challenges the district court's $3,205 award compensating the Alstons for auto insurance premiums paid while owning the vehicle. It argues that Louisiana caselaw does not permit recovery of insurance premiums in a rescission sale, see *Carpenter v. Lafayette Woodworks, Inc.*, 653 So. 2d 1187, 1197-98 (La. Ct. App. 3 Cir. 1995), and that the Alstons benefitted from having auto insurance when they used the RV for pleasure trips, making inappropriate an award for those premiums. We find neither of Fleetwood's arguments to have merit.

In a suit for rescission, a manufacturer "is liable to the buyer for . . . reasonable expenses occasioned by the sale and those incurred for the preservation of the thing." LA. CIV. CODE ANN. art. 2545 (2005). Because motor vehicle insurance is compulsory in Louisiana, Louisiana caselaw holds that "[i]nsurance premiums are reasonable expenses occasioned by the sale." *Miller v. Ford Motor Co.,* 815 So. 2d 997, 1001 (La. Ct. App. 3 Cir. 2002); *see also Holloway v. Gulf Motors, Inc.*, 588 So. 2d 1322, 1328 (La. Ct. App. 2 Cir. 1991).[3] Furthermore, for this same reason, it is irrelevant that the Alstons received some benefit from the insurance coverage when they drove the vehicle. Auto insurance is required to legally maintain the vehicle, whether they used the vehicle for their own enjoyment or whether they did nothing but drive it to numerous inconvenient service visits. The district court did not err in awarding insurance premiums to the Alstons.

V

Fleetwood also challenges the district court's $25,000 award for mental anguish, arguing that the Alstons experienced mere "frustration" and "embarrassment," neither of which qualify as

---

[3] Fleetwood's reliance on *Carpenter* is misplaced. The court in *Carpenter* specifically refrained from "resolv[ing] the question of whether insurance costs are recoverable in redhibition," holding instead that the plaintiff failed to carry his burden of proof on how much he paid for insurance. *Id.* at 1197.

compensable. *See* LA. CIV. CODE art. 1998, rev. cmt. (e) ("[M]ere worry or vexation is not a compensable nonpecuniary loss."). We agree, albeit for slightly different reasons.

Purchasers may recover mental anguish damages caused by a defective product even though the product is not unreasonably dangerous and they have not sustained physical injuries. *See Young v. Ford Motor Co., Inc.*, 595 So. 2d 1123, 1124 (La. 1992). In redhibition cases, damages for mental anguish can only be awarded when a "principal or exclusive object" of the purchase is to satisfy a nonpecuniary interest. *See Young*, 595 So. 2d at 1130. Louisiana law recognizes a purchase as satisfying a nonpecuniary interest only in the rarest of circumstances. *See., e.g.*, *Thomas v. Desire Cmty. Housing Corp.*, 773 So. 2d 755 (La. Ct. App. 4 Cir. 2000); *Young*, 595 So. 2d at 1133 (holding that purchase of lemon pickup truck does not qualify for mental damages even though, as a result, plaintiff suffered physical manifestations of insomnia, lack of concentration, and sexual disorders and was prescribed tranquilizers and antidepressants).

In Louisiana, vehicles and mobile homes are presumptively pecuniary purchases. *Id.* at 1133; *Ducote v. Perry's Auto World, Inc.*, 745 So. 2d 229, 232-33 (La. Ct. App. 1 Cir. 1999) ("[I]n the absence of particular factors demonstrating otherwise, the nature of such a contract [for an vehicle] is deemed to be primarily pecuniary."); *Rogers v. Nelson Dodge, Inc.*, 407 So. 2d 443, 446-47 (La. Ct. App. 3 Cir. 1981). *Cf. Beasley v. Ed's Mobile Homes, Inc.*, 824 So. 2d 383, 388 (La. Ct. App. 3 Cir. 2002); *McGough v. Oakwood Mobile Homes, Inc.,* 779 So. 2d 793, 804 (La. Ct. App. 2 Cir. 2000). While there are circumstances where the purchase of a vehicle may be made for "nonpecuniary interest relating to enjoyment, taste, and personal preference of owning and driving the chosen vehicle," *Young,* 595 So. 2d at 1133, a nonpecuniary car purchase would be that of an antique or a specially-designed custom-built vehicle, not a new car from a car dealership lot. *Id.*

Applying these principals to the instant case, there is no evidence that the Alstons purchased their Fleetwood RV to satisfy a nonpecuniary interest. They have not shown their particular Fleetwood RV to satisfy a particular taste, enjoyment, or personal preference. Rather, they merely say that they wanted "something nice." Using the mobile home for recreational purposes is not enough to support a nonpecuniary interest in the RV. *See Young*, 595 So. 2d at 1133 ("Even his plans for recreational use of the vehicle (i.e., fishing trips) constituted the pecuniary interest of requiring suitable transportation to haul his fishing boat."). The Alstons' RV was not custom-built; they will be able to replace it with the $130,094 rescission award. Thus, they have not established a nonpecuniary interest in the RV so as to qualify for mental anguish damages. *See Beasley*, 824 So. 2d at 388; *McGough*, 779 So. 2d at 804.

VI

Fleetwood also argues that it should receive credit for the Alstons personal use of the vehicle ) ) approximately 37,000 miles worth ) ) during the months they owned and used the RV. Louisiana law provides, "[i]f the use made of the thing . . . [was] of some value to the buyer, such a seller *may be allowed credit* for such use or fruits." LA. CIV. CODE ANN. art. 2545 (2005) (emphasis added). As indicated by the discretionary wording of the statute, the decision to award credit for use is within the purview of the district court and is determined by balancing those facts presented at trial. "[E]ven the value of an extensive use may be overridden by great inconveniences incurred because of the defective nature of the thing and constant interruptions in service caused by the seller's attempts to repair." *Alexander*, 359 So. 2d at 611. Fleetwood claims that the RV's odometer reading demonstrates that roof leaks did not limit the Alstons' use of the RV, as they put approximately 37,000 miles on the vehicle in only a few months, not including the mileage associated

with service visits and repairs.

While we sympathize with Fleetwood's desire to be credited for the miles used for the Alstons' vacations, under this deferential standard of review, we cannot say that the district court clearly erred when it determined that the use of the RV in its damaged state is not worth any reduction of the purchase price. *See, e.g.*, *Beth Israel v. Bartley, Inc.*, 579 So. 2d 1066, 1078-79 (La. Ct. App. 4 Cir. 1991); *Morrison*, 792 So. 2d at 17. The Alstons testified that they could not use the RV when it rained, they watched the weather to determine when they could take the RV, and they would have to put a pan under the leaks when they were caught in the rain. The Alstons were forced to drive their RV from Louisiana to Houston for repairs on three different occasions, with one of them driving the RV and one following behind in a car. The RV was in service in Houston for a total of 48 days and at the Fleetwood manufacturing facility in Indiana for 35 days.[4] It was not clear error for the district court to find that the Alstons' frustration and inconvenience outweighed 37,000 miles of personal use.

VII

Finally, Fleetwood disputes $36,287 in attorney's fees. We review the award of attorney's fees for an abuse of discretion. *Flourine On Call, Ltd. v. Fluorogas Ltd.*, 380 F. 3d 849, 866 (5th Cir. 2004). We review any factual finding under this award for clear error. *Id.*

Under Louisiana law, a party who recovers in a redhibition action may recover "reasonable attorney fees." LA. CIV. CODE art. 2545. There are ten relevant factors for courts to consider when

---

[4] The Alstons also testified that they had to pull over every time a burning smell surfaced and wait until it went away. While this complaint was not a basis for the instant redhibitory action, as the burning smell was fixed by Fleetwood, it is a fact relevant to reduction of the purchase price.

determining the reasonableness of an attorney's fees award:

> (1) the ultimate result obtained; (2) the responsibility incurred; (3) the importance of the litigation; (4) the amount of money involved; (5) the extent and character of the work performed; (6) the legal knowledge, attainment, and skill of the attorneys; (7) the number of appearances involved; (8) the intricacies of the facts involved; (9) the diligence and skill of counsel; and (10) the court's own knowledge.

*Rivet v. State, Dept. of Transp. & Dev.*, 680 So. 2d 1154, 1161 (La. 1996).

In this case, the Alstons' attorney submitted an affidavit in which he says that his extensive preparation for this one-day bench trial involved multiple meetings, twenty-eight pieces of correspondence and numerous pleadings, four depositions, interrogatories, requests for production, responses to the defendant's discovery requests, and initial disclosures. The attorney's affidavit, however, does not give specific or even approximate times for the amount of work he did in preparing for this case. It appears as if the district court based its fee award not on the reasonableness of the work alleged in the attorney's affidavit so much as the attorney's twenty-percent contingency fee agreement with the Alstons.

The district court did not abuse its discretion in awarding fees based on a contingency agreement, as an attorney-client contingency contract is relevant to the district court's determination of a fee award, see *Rivet*, 680 So. 2d at 1162 n.8, and Louisiana Courts regularly uphold attorney's fees pursuant to a contingency fee contract as long as the fees are reasonable. *See Norfleet v. Lifeguard Transp. Serv.*, 934 So. 2d 846, 860 (La. Ct. App. 4 Cir. 2006) (affirming attorneys fees pursuant to 40% contingency contract); *Brumfield v. Coastal Cargo Co., Inc.*, 768 So. 2d 634, 642 (La. Ct. App. 4 Cir. 2000) (same); *Short v. Plantation Mgmt. Corp.*, 781 So. 2d 46, 65-66 (La. Civ. App. 1 Cir. 2000) (awarding 1/3 of judgment in attorneys fees, as provided in contingency

agreement).[5]

However, assuming that attorney's fees were awarding on a contingency basis, in light of our reversal of the mental anguish judgment, the results obtained by the Alstons' lawyer has changed. *See Flourine*, 380 F. 3d at 867. We therefore vacate the award of attorney's fees and remand for further reconsideration in light of this opinion. *Id.* On remand, we note the difficulties in determining whether $36,287 is a reasonable fee when there is no record of how much actual time the Alstons' attorney spent on this case.

## VIII

For the foregoing reasons, we AFFIRM the district court's determination that the RV had a redhibitory defect; AFFIRM rescission of the sale plus interest; AFFIRM award of insurance premiums; VACATE the mental anguish award; AFFIRM denial of credit for the Alstons' personal use of the vehicle; and VACATE and REMAND the award of attorney's fees.

---

[5] Fleetwood cites *Rivet v. State* in which the Louisiana Supreme Court reversed an award of attorney's fees because there was no evidence of the actual amount of time that the plaintiff's attorney spent on the case. *See* 680 So. 2d at 1161-62. In *Rivet*, however, the statute authorizing the award of attorney's fees allowed an award of "reasonable attorney's fees actually incurred." *See* LA. REV. STAT. § 13:5111. The statute at issue, however, allows an award of "reasonable attorney's fees." *See* LA. CIV. CODE art 2542. *Rivet*, which turned on the "actually incurred" language, is inapposite on this point. *See* 680 So. 2d at 1162.